[No. D054637. Fourth Dist., Div. One. Apr. 19, 2010.]

DAGMAR HALE, Plaintiff and Appellant, v.
SHARP HEALTHCARE et al., Defendants and Respondents.

## COUNSEL

Law Offices of Barry L. Kramer, Barry L. Kramer; Strange & Carpenter, Brian R. Strange and Gretchen Carpenter for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris and Alexis S. Gutierrez for Defendants and Respondents.

## OPINION

McCONNELL, P. J.—This is a putative class action by Dagmar Hale against Sharp Healthcare and Sharp Grossmont Hospital (together Sharp) for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), breach of contract and breach of the implied covenant of good faith and fair dealing. Hale's theory is that Sharp deceptively and unfairly charged her and other uninsured patients fees for medical services that substantially exceeded the fees it accepted from patients covered by Medicare or private insurance. Hale appeals a judgment of dismissal entered after the court sustained without leave to amend Sharp's demurrer to her second amended complaint (SAC). We conclude the court erred by sustaining the demurrer to the UCL and CLRA causes of action, as the SAC sufficiently alleges Hale's standing, but properly sustained the demurrer to the contract causes of action. Further, the court did not abuse its discretion by denying Hale's motion for reconsideration or leave to amend the contract causes of action. We reverse the judgment insofar as it pertains to the UCL and CLRA causes of action. We affirm the judgment in all other respects.

## COMPLAINT ALLEGATIONS AND FACTUAL BACKGROUND

On January 25, 2007, Hale was admitted to Sharp Grossmont Hospital. She was uninsured at the time, and on her admittance Sharp required her to sign a form entitled "Admission Agreement for Inpatient and Outpatient Services"

(hereafter Admission Agreement). The Admission Agreement provided, "you hereby individually obligate yourself to pay the account of the hospital in accordance with the regular rates and terms of the hospital." Sharp discharged Hale the following day. During her stay, Sharp provided her with "medical treatment, central services, lab work, medication, emergency hospital care, and C.T. scans." Sharp billed her $14,447.65 for the services.

In August 2007 Hale filed a putative class action against Sharp for violation of the UCL, violation of the CLRA, breach of contract and breach of the implied covenant of good faith and fair dealing. In September 2007 Hale filed a first amended complaint (FAC) with the same causes of action.

Sharp successfully demurred to the FAC, and in May 2008 Hale filed the SAC, which contains the same causes of action and is the subject of this appeal.[1] The SAC alleges that contrary to Sharp's promise in its Admission Agreement to charge uninsured patients its "regular rates," it engaged in an unfair and unreasonable pricing practice by charging them "exponentially more" for the same services than it accepted from patients covered by Medicare or private insurance. The SAC also alleges Sharp's practice has "a significant detrimental impact on the large population of uninsured persons, who are generally the least able to afford medical care."

Additionally, the SAC alleges that hospitals, including Sharp, "maintain documents called Chargemasters, which are spreadsheets that list the gross charge for each product and service provided by the hospital. Plaintiff is informed and believes . . . that these gross charges rarely, if ever, bear any relation to the hospital's costs for providing treatment and differ from the actual, lower charges assessed against the overwhelming majority of patients who participate in Medicare or private insurance programs." The SAC alleges the "Chargemaster rates often form the starting point for negotiations with insurance companies and managed care organizations to determine reasonable (and lower) reimbursement rates, or for determining Medicare outlier payments to hospitals." Further, the SAC alleges that when Sharp admitted Hale to its hospital, she made a downpayment of $500.

Sharp demurred to the SAC. In a tentative ruling, the court sustained the demurrer to the UCL claim with leave to amend. The ruling states the SAC sufficiently pleads injury in fact, but it is insufficient because it does not allege she "relied on Sharp charging its 'regular rates' in receiving treatment." The ruling also sustained the demurrer to the CLRA claim with leave to amend, again on the ground the SAC does not plead reliance on an alleged

---

[1] The SAC also includes a count for unjust enrichment, but Hale does not challenge the court's demurrer ruling as to that count.

misrepresentation. The ruling overruled the demurrer to the breach of contract and implied covenant claims, explaining the SAC sufficiently alleges Hale's performance or excuse for nonperformance.

After a hearing, the court took the matter under submission. The court later sustained the demurrer to all causes of action, without leave to amend on the ground the SAC was Hale's third attempt to plead a valid cause of action.

Hale moved for reconsideration and submitted a proposed third amended complaint (TAC). The court denied the motion. Sharp then moved ex parte for dismissal of the SAC, and the court granted the motion. A judgment was entered on January 5, 2009.

## DISCUSSION

### I

### *Standard of Review*

"A demurrer tests the sufficiency of a complaint as a matter of law." (*City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1718 [29 Cal.Rptr.2d 89].) In reviewing the propriety of the sustaining of a demurrer, the "court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

We review the trial court's ruling independently. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We uphold the court's ruling "on any sufficient ground, whether relied on by the court below or not." (*Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3 [143 Cal.Rptr. 295].)

### II

### *Hospital Billing Practices*

Preliminarily, we dispose of Sharp's argument that courts should discourage lawsuits based on disparities in hospital billing rates for uninsured and

insured patients, since the matter is highly regulated. Sharp cites such statutes as Health and Safety Code section 1339.51, subdivision (a)(1), which provides that a hospital "shall make a written or electronic copy of its charge description master available" either on its Internet Web site or at the hospital, and Business and Professions Code section 657, subdivisions (a) and (b), which, respectively, allow a hospital to grant a discount in fees for services in exchange for prompt payment, or when it reasonably believes a patient is not entitled to or eligible for insurance coverage. Sharp asserts there is a "disturbing national trend of cases that, like this one involving Hale, seek to drag the judiciary into the complex area of health care finance and economic policy." Further, Sharp cites out-of-state cases for the proposition these cases are "generally unsuccessful."[2]

■ "When 'the Legislature has permitted certain conduct, "courts may not override that determination" by declaring such conduct to be actionable under [Business and Professions Code] section 17200.' [Citation.] To forestall an action under the UCL, '[a] provision must actually "bar" the action or clearly permit the conduct. There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful.' " (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 644 [72 Cal.Rptr.3d 903].) Sharp does not defend the demurrer ruling on the ground the Legislature has permitted Sharp's conduct or has actually barred this action. To the contrary, Sharp concedes the "statutes that govern the billing practices of hospitals are not precisely germane" to this appeal. Accordingly, Sharp's argument is irrelevant.

---

[2] At least one other California case involving disparate rates for insured and uninsured patients presumably withstood the demurrer stage of litigation. In *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 499 [89 Cal.Rptr.3d 615], the health care provider agreed in a proposed settlement to "end[] price discrimination against the uninsured." In affirming the settlement the court noted substantial "procedural skirmishing ensued in the uninsured class case, including complex pretrial issues . . . ." (*Ibid.*) The court also noted the issue of whether the provider there "had a duty not to give discounts to insured patients, or, if given, a duty to give the same discounts to uninsured patients," was "hotly contested." (*Id.* at p. 511.)

Nationwide, purported class actions are being brought against hospitals under a variety of federal and state law theories pertaining to disparate billing practices. It appears that such suits have largely been unsuccessful. (See *Burton v. William Beaumont Hospital* (E.D.Mich. 2005) 373 F.Supp.2d 707, 712 [discussing dozens of similar federal lawsuits and concluding plaintiffs misguidedly came to the judicial branch for relief that only the legislative branch can grant]; *Bobo v. Christus Health* (E.D.Tex. 2005) 227 F.R.D. 479, 480 [discussing what court refers to as "latest epidemic" in class action suits].)

## III

### UCL Cause of Action

#### A

##### Overview of Law

■ "The purpose of the UCL [citation] 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]'" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1470 [49 Cal.Rptr.3d 227].) "A UCL action is equitable in nature; damages cannot be recovered. [Citation.] . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

The UCL does not proscribe specific acts, but broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." (Bus. & Prof. Code, § 17200.) "The scope of the UCL is quite broad. [Citations.] Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." (*McKell v. Washington Mutual, Inc., supra,* 142 Cal.App.4th at p. 1471.) "'Therefore, an act or practice is "unfair competition" under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice.'" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1335 [90 Cal.Rptr.3d 589] (*Troyk*).)

■ Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages. (*Troyk, supra,* 171 Cal.App.4th at p. 1335.) At the November 2, 2004, General Election, the voters approved Proposition 64, which amended the UCL to provide that a private person has standing to bring a UCL action only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204; see *Troyk, supra,* at p. 1335.) "A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590 [80 Cal.Rptr.3d 316].)

"The voters' intent in passing Proposition 64 and enacting the changes to the standing rules in Business and Professions Code section 17204 was unequivocally to narrow the category of persons who could sue businesses

under the UCL." (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 853 [70 Cal.Rptr.3d 466].) "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses . . . .' [Citation.] The former law, the voters determined, had been 'misused by some private attorneys who' '[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public ·without any accountability to the public and without adequate court supervision.' [Citation.] '[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' [citation] and by providing 'that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' [citation]." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207].)[3]

Hale contends the SAC sufficiently alleges her standing under Business and Professions Code section 17204 to bring an action under both the "unlawful" and "unfair" prongs of the UCL. (Bus. & Prof. Code, § 17200.)

B

*Unlawful Business Practice*

1

██ "By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) "An unlawful business practice under [Business and Professions Code]

---

[3] "Proposition 64 also amended Business and Professions Code section 17203, which authorizes courts to enjoin unfair competition, by adding this sentence: 'Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.' " (*Hall v. Time Inc., supra*, 158 Cal.App.4th at p. 852.)

section 17200 is ' "an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*. [Citation.]" ' " (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 287 [37 Cal.Rptr.3d 434].) " 'Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200. [Citation.]' " (*Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539 [72 Cal.Rptr.3d 888].)

The SAC's predicate for the claim of unlawfulness is Sharp's alleged violation of Civil Code section 1770, subdivision (a)(5), (9) and (16), provisions of the CLRA that pertain to misrepresentations and deceptive advertising in the sale of goods or services.[4]

The court found the SAC adequately pleads "injury in fact" within the meaning of Business and Professions Code section 17204, and Sharp does not challenge the finding. As this court explained in *Troyk, supra,* 171 Cal.App.4th at page 1346, "[a]n injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing." We also relied on the United States Supreme Court's description of "injury in fact" for federal court standing purposes as " 'an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " [citations].' " (*Ibid.,* quoting *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560–561 [119 L.Ed.2d 351, 112 S.Ct. 2130].) We cited a federal opinion that explained, " 'Injury-in-fact is not Mount Everest. [Citation.] ("The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege[] some specific, 'identifiable trifle' of injury").' " (*Troyk, supra,* at p. 1347, quoting *Danvers Motor Co., Inc. v. Ford Motor Co.* (3d Cir. 2005) 432 F.3d 286, 294.)

Even though the SAC alleges Hale has paid only $500 of her $14,447.65 medical bill, it also alleges the Admission Agreement obligates her to pay Sharp the balance on her account. Thus, she faces at least an *imminent*

---

4 " ' "The [CLRA], enacted in 1970, 'established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . ." [Citation.]' " [Citation.] "The self-declared purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " ' " (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1275 [39 Cal.Rptr.3d 634].)

Subdivision (a)(5) of Civil Code section 1770 proscribes "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; subdivision (a)(9) of the statute proscribes "Advertising goods or services with intent not to sell them as advertised"; and subdivision (a)(16) of the statute proscribes "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

invasion or injury to a legally protected interest. (See *Troyk, supra*, 171 Cal.App.4th at p. 1346.) The term "imminent" is defined as "ready to take place," "hanging threateningly over one's head," and "menacingly near." (Webster's 3d New Internat. Dict. (1993) p. 1130.) Certainly, this is not the type of action Proposition 64 was intended to squelch. Hale was a bona fide consumer of medical services.

2

The court found the SAC insufficiently alleges standing, or the causation element of the claim—that Hale suffered injury "as a result of" Sharp's unfair competition. (Bus. & Prof. Code, § 17204.) The court explained, "Plaintiff fails to allege she relied on Sharp charging its 'regular rates' in receiving treatment."

█ The UCL does not define the phrase "as a result of" in Business and Professions Code section 17204. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*).) In *Tobacco II*, the California Supreme Court held that after Proposition 64, representative plaintiffs, but not absent class members, must meet Proposition 64 standing requirements. (*Tobacco II*, at p. 320.) The court also addressed the phrase "as a result of" in the context of a claim under the "fraud" prong of the UCL. The court explained, "there is no doubt that reliance is the causal mechanism of fraud. [Citation.] Additionally, because it is clear that the overriding purpose of Proposition 64 was to impose limits on private enforcement actions under the UCL, we must construe the phrase 'as a result of' in light of this intention to limit such actions. [Citation.] Therefore, we conclude that this language imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." (*Tobacco II*, at p. 326.)

█ The court explained, " '[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct. [Citation.] A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.' [Citation.] [¶] While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. ' "It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his con-duct. . . . It is enough that the representation has played a substantial part, and

so has been a substantial factor, in influencing his decision." [Citation.] [¶] Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. [Citations.] A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" [citations], and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." [Citation.]' " (*Tobacco II, supra,* 46 Cal.4th at p. 326.)

Hale asserts *Tobacco II*'s reliance requirement is only applicable to a claim under the "fraud" prong of the UCL, and thus she is not required to plead actual reliance to pursue a claim under the "unlawful" prong. Rather, the "as a result of" phrase in Business and Professions Code section 17204 is satisfied by the SAC's general allegation that Sharp's unlawful conduct was a proximate cause of her injury.

■ Construing the phrase "as a result of" in Business and Professions Code section 17204 in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of *Tobacco II* applies equally to the "unlawful" prong of the UCL, when, as here, the predicate unlawful conduct is misrepresentation. Indeed, the court explained in *Tobacco II*: "We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a *fraud theory involving false advertising and misrepresentations to consumers.* The UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice . . . .' [Citation.] There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." (*Tobacco II, supra,* 46 Cal.4th at p. 325, fn. 17, italics added.) The concept of reliance is unequivocally applicable here.

Hale also asserts reliance is immaterial because her claim for unlawfulness is not fraud based. She concedes, however, that her "basic allegation" is that "Sharp promised to provide medical services at its 'regular rates,' but instead billed grossly excessive amounts which far exceeded its 'regular rates.' "

■ We agree with Hale, however, that "to the extent [she] is bringing a fraud-based claim under the UCL, she has reasonably pled reliance." The SAC alleges Hale signed the Admission Agreement, and "at the time of signing the contract, she was *expecting* to be charged 'regular rates,' and certainly not the grossly excessive rates that she was subsequently billed."

(Italics added.) This allegation appears in the breach of contract cause of action, but the UCL cause of action incorporates the allegations of all other causes of action. We must interpret the complaint reasonably, "reading it as a whole and its parts in their context." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439 [88 Cal.Rptr.3d 330].) As Hale notes, the "difference between 'expecting' to be charged regular rates and 'relying' on being charged regular rates is a distinction without a difference." We see no utility in requiring Hale to amend her complaint to exchange the term "expecting" for the term "relying."[5] We hold the trial court erred by sustaining Sharp's demurrer to the UCL cause of action.

Sharp argues that Hale was required to allege she actually relied on its alleged misrepresentations "when she was deciding where to seek medical treatment," and "Hale could not *possibly* have made any such allegation" because she would not have seen the Admission Agreement until after she arrived at the hospital. (Original italics.) It is possible, however, for a person who has arrived at the hospital to rely on the Admission Agreement in deciding whether to proceed with treatment. The SAC does allege Sharp misrepresented on its Web site that its goal is to provide patients with " 'cost-effective' " services, and if Hale based her UCL claim exclusively on that conduct the SAC would be insufficient. Her UCL claim, however, is also based on the language of the Admission Agreement.[6]

IV

*CLRA Cause of Action*

 Under Civil Code section 1780, subdivision (a), CLRA actions may be brought "only by a consumer 'who suffers any damage *as a result of the use or employment*' of a proscribed method, act, or practice. (Italics added.) 'This language does not create an automatic award of statutory damages upon proof of an unlawful act. Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.' [Citation.] Accordingly, 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.' " (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 809 [66 Cal.Rptr.3d 543].) A "misrepresentation is material for a plaintiff

---

[5] Hale's proposed TAC alleged that "[i]n obtaining treatment from Defendants' hospital, and in making payment, Plaintiff relied on the . . . representation that she would be charged the hospital's 'regular rates.' "

[6] Since the UCL cause of action survives the demurrer, we are not required to separately consider Hale's contention she was not required to allege actual reliance to pursue a claim under the "unfair" prong of the UCL. (See, however, our discussion of the issue in *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350 [108 Cal.Rptr.3d 682].)

only if there is reliance—that is, ' " 'without the misrepresentation, the plaintiff would not have acted as he did.' " '" (*Id.* at p. 810.)

As with the UCL cause of action, Sharp defends the court's demurrer ruling on the CLRA cause of action on the sole ground that Hale was required to allege reliance on a misrepresentation by Sharp in deciding to seek medical treatment at its hospital. Again, however, to the extent Hale's CLRA claim is fraud based, the SAC adequately alleges the reliance element. Thus, the court erred by sustaining the demurrer to the CLRA cause of action.

V

*Contract Causes of Action*

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." (*McKell v. Washington Mutual, Inc., supra*, 142 Cal.App.4th at p. 1489.)

Hale contends the court erred by finding the SAC does not sufficiently allege her performance or excuse for nonperformance of the contract. "[P]revention of performance by one party to a contract excuses performance by the other [party]." (*Lortz v. Connell* (1969) 273 Cal.App.2d 286, 290 [78 Cal.Rptr. 6]; see *Lewis Publishing Co. v. Henderson* (1930) 103 Cal.App. 425, 429 [284 P. 713] ["it is elementary that one party to a contract cannot compel another to perform while he himself is in default"]; *Wood, Curtis & Co. v. Seurich* (1907) 5 Cal.App. 252, 254 [90 P. 51] ["refusal of one party to a contract to make payment as called for by the terms of a contract excuses the other party from further performance on his part"].)

The breach of contract claim is based on Sharp's Admission Agreement, which obligates Hale to pay its " 'regular rates.' " The SAC alleges Hale was hospitalized overnight, and during her stay she "received medical treatment, central services, lab work, medication, emergency hospital care, and C.T. scans." Yet, the SAC alleges she paid only $500 toward a $14,447.65 bill, which cannot be considered performance. Hale asserts she also alleged "payment of at least an additional $1,000.00 to medical providers including" Sharp. The SAC, however, actually alleges that "from March 2007 through July 2007, [Hale] made additional payments to *various medical providers relating to her treatment* at [Sharp's] hospital, totaling over an additional $1,000." (Italics added.) In her opposition to Sharp's demurrer, she admitted she paid Sharp only $500, and she paid the additional $1,000 "to other medical providers."

 The SAC also alleges that "[a]s a result of the grossly excessive billing, [she] was excused from paying the *grossly excessive amounts* for which she was billed, which were exponentially larger than the 'regular rates.'" (Italics added.) This does not sufficiently allege an excuse for nonperformance. "[E]xcuses must be pleaded specifically." (4 Witkin, Summary of Cal. Procedure (5th ed. 2008) Pleading, § 532, p. 661.) Even if Sharp's conduct excused Hale from paying the portion of its bill that represented "grossly excessive" rates, the SAC does not allege the reasonable value of Hale's services was only $500, that she made any effort to determine the reasonable value of the services, or that she made any effort to pay the discounted rates Sharp accepted from patients covered by Medicare or private insurance. The SAC does not suggest Sharp prevented Hale from paying at least what she considers is fair. Further, since Hale paid Sharp only $500, the SAC shows she suffered no damages for the alleged breach of contract.

The SAC's cause of action for breach of the implied covenant and fair dealing includes the same performance and excuse allegations as the breach of contract action. The court properly sustained the demurrer to both contract-based claims.

## VI

### *Motion for Reconsideration/Leave to Amend*

Hale contends the court abused its discretion by denying her motion for reconsideration and leave to file her proposed TAC. The proposed TAC alleges Sharp's bill to her of $14,447.65 "was substantially greater than [its] 'regular rates' charged to the great majority of patients, who are insured and/or covered by Medicare, which would have amounted to no more than $5,000.00 for the same services." The allegation does not show performance or any excuse for nonperformance. To the contrary, it further clarifies that Hale did not perform, she was not excused from performing by paying Sharp substantially more than $500, and she suffered no breach of contract damages. Further, Hale does not suggest she could in good faith amend the complaint yet again to allege additional or different facts showing performance or excuse for nonperformance.

We find no abuse of discretion. In the case of a demurrer, "leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action." (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671].)

## DISPOSITION

The judgment is reversed insofar as it pertains to the UCL and CLRA causes of action. The judgment is otherwise affirmed. The parties are to bear their own costs on appeal.

Nares, J., and Irion, J., concurred.