Filed 5/16/16  Kopp v. Door to Door Storage CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| MADELEINE KOPP, | B266202 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC515507) |
| v. | |
| DOOR TO DOOR STORAGE, INC., | |
| Defendant and Respondent. | |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

        Law Offices of Dale Washington and Dale E. Washington for Plaintiff and Appellant.

        Lewis Brisbois Bisgaard & Smith, Hellar-Ann Hancock for Defendant and Respondent.

————————————

After Door to Door Storage, Inc. (DTD), a self-service storage provider, placed a lien on, and then sold, Madeleine Kopp's property, Kopp sued DTD for conversion and violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). The trial court granted summary adjudication on those claims, finding they were time-barred, and denied Kopp's request for leave to amend her complaint to assert a cause of action for breach of written contract. On appeal Kopp contends triable issues of material fact exist as to DTD's limitations defense and the court abused its discretion in denying her leave to amend. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Kopp's Lawsuit*

Kopp entered into a storage agreement with Public Storage Pickup & Delivery, L.P., DTD's predecessor in interest, in August 2005. In October 2009 DTD purchased assets of Public Storage and assumed its existing contractual obligations. DTD sent written notice to Kopp of this transaction on October 7, 2009, informing her the "terms of [her] contract will remain unchanged unless and until you enter into a separate agreement with Door to Door."

Beginning in December 2009 and continuing through March 2010, DTD sent several written notices to Kopp informing her that her account was past due. When Kopp did not respond by bringing her account current, in early 2010 DTD placed a lien on and then sold the property Kopp stored at a DTD facility.

On July 17, 2013 Kopp sued DTD. In her first amended complaint she asserted claims for a violation of the California Self-Service Storage Facility Act (SSSFA) (Bus. & Prof. Code, § 21700 et seq.), breach of contract, violation of the CLRA and conversion.

### 2. *DTD's Demurrer to the First Amended Complaint*

On December 24, 2013 DTD demurred to the first amended complaint. DTD argued, among other things, because Kopp admitted in her complaint she had received a warehouse receipt in exchange for the storage of her goods, the SSSFA did not apply; the

2

transaction was instead governed by the Commercial Code. (See Bus. & Prof. Code, § 21701.) As to Kopp's other claims, DTD asserted Kopp had not alleged the requisite elements of a CLRA violation or a conversion claim and had not specified whether her contract with DTD was written or oral.

The court sustained DTD's demurrer to the SSSFA claim, which Kopp did not oppose, without leave to amend.[1] The court sustained the demurrer to the remaining causes of action, which Kopp did oppose, with leave to amend.

3. *Kopp's Second Amended Complaint and Request To File a Third Amended Complaint*

On June 4, 2014 Kopp filed a second amended complaint limited to claims for violation of the CLRA and conversion. In particular, as to the CLRA claim, Kopp alleged the SSSFA governed the transaction and DTD had failed to abide by several provisions of the SSSFA, including charging late fees that exceeded those permitted under the SSSFA. As to the conversion claim, she alleged DTD lacked any authority to impose a lien on, deny her access to, and ultimately sell, her items.

On October 7, 2014 DTD filed an ex parte application to continue the December 8, 2014 trial date. DTD asserted it had only recently located the written contract between Public Storage and Kopp, that contract governed the parties' relationship, and a continuance of the trial date was necessary to permit DTD to amend its answer and bring a timely summary judgment motion. The court granted the application and continued the trial date to October 5, 2015.

On October 27, 2014 Kopp moved for leave to file a third amended complaint to include a cause of action for breach of written contract based on DTD's recent production

---

[1]     Kopp contends she effectively withdrew her SSSFA cause of action, not because of DTD's demurrer, but because she recognized there was no private right of action authorized under the SSSFA. (See generally *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596 [violation of a statute does not give rise to a private cause of action unless Legislature has "'manifested an intent to create such a private cause of action' under the statute"].)

3

of the Public Storage contract.  That motion was not scheduled to be heard until June 17, 2015.

    4. *DTD's Motion for Summary Judgment/Summary Adjudication Directed to the Second Amended Complaint*

        a. *DTD's motion*

On March 26, 2015, before its response to Kopp's motion for leave to file a third amended complaint was due, DTD moved for summary judgment or, in the alternative, summary adjudication, directed to the second amended complaint.  In its motion, calendared to be heard on June 12, 2015, five days before the hearing on Kopp's motion for leave to amend, DTD argued both the CLRA and the conversion causes of action were time-barred under the three-year statutes of limitation governing those claims.

In support of its motion DTD provided evidence of Kopp's written contract with Public Storage in August 2005, its October 2009 purchase of Public Storage's assets and the written notices it sent to Kopp advising her that her account was past due.  Kopp admitted in her deposition she had received a past-due notice dated December 14, 2009 alerting her that her account was delinquent; a past-due notice dated January 14, 2010 stating she owed $285; a preliminary lien notice, dated February 4, 2010, stating that, if the amount of $360 was not paid in full within 14 days, DTD would place a lien against her property that "may result in the sale or disposal of her goods"; and a notice dated February 19, 2010 entitled "Notice of Lien Sale Auction" informing Kopp that, as a result of her nonpayment, a lien in the amount owed had been placed on the stored property, her right to use the storage container and access her property was denied, and if payment was not made in 15 days, DTD would sell her property at a public auction at its warehouse on March 24, 2010 to satisfy the lien.[2]  Kopp testified she understood at the time she received the preliminary lien notice and notice of lien sale that, if she did not make

_____

[2]    DTD's counsel provided his own declaration that the notices were mailed on the dates provided.  The court sustained Kopp's objection to DTD's counsel's declaration for lack of personal knowledge, but noted Kopp had admitted in her deposition that she received the notices.

4

payment, her property would be sold at public auction on March 24, 2010 to satisfy the lien. DTD also twice published notice of the lien sale in the newspaper, once on March 9, 2010 and again on March 16, 2010.

DTD's assistant controller, Carol Tomisser, testified in her declaration that Kopp's property was sold at auction on March 24, 2010, more than three years prior to the date Kopp filed her lawsuit. DTD also provided Kopp's deposition testimony acknowledging she did not go to the auction, send an agent to the auction or otherwise send any written objection to the sale. Kopp explained she tried to call DTD one or more times, but had been unsuccessful in obtaining a response.

### b. *Kopp's opposition*

Kopp opposed DTD's motion for summary judgment/summary adjudication. In particular, Kopp argued DTD failed to demonstrate her property was sold in March 2010. Kopp supplied the deposition testimony of Ian Anderson, DTD's controller and Tomisser's supervisor, who had been designated as the company's person most knowledgeable for the case and who testified he had arrived at the company in 2014 and did not know whether Tomisser had been employed by DTD in March 2010. According to Kopp, Anderson's deposition testimony undermined Tomisser's, resulting either in DTD's failure to meet its initial burden on summary adjudication/summary judgment as to when the property was actually sold or, at the very least, raising triable issues of material fact precluding summary judgment/summary adjudication.

Kopp also argued triable issues of material fact existed as to when she knew or should have known her items had been sold, which would establish the date of injury under the delayed discovery doctrine. Kopp emphasized DTD had provided no notice after the sale confirming the sale had occurred as scheduled and had produced no documents to that effect in this case. Alternatively, she argued, DTD was equitably estopped by its own conduct—its failure to respond to Kopp's telephone calls and failure to notify Kopp after the sale had occurred—from invoking the statute of limitations as an affirmative defense.

5

c. *The trial court's ruling granting summary adjudication*

On June 12, 2015 the trial court granted DTD's motion for summary adjudication as to both of Kopp's causes of action. (The court explained it would not grant summary judgment in light of Kopp's pending motion for leave to amend her complaint.) The court found Kopp's CLRA and conversion claims had accrued in February 2010 when Kopp received notice of imposition of the lien and the lien sale and was denied access to her property. Accordingly, her complaint, filed more than three years later on July 17, 2013, was time-barred.

5. *The Trial Court's Denial of Leave To File a Third Amended Complaint*

On June 4, 2015 DTD opposed Kopp's motion for leave to file a third amended complaint, arguing the proposed complaint failed to state a cause of action for breach of written contract. It also argued the proposed contract claim was time-barred and any amendment to the complaint at this late date would prejudice DTD.

On June 17, 2015 the court denied Kopp's motion. The court explained Kopp's contract claim rested on alleged breaches of the SSSFA, but, contrary to Kopp's contention, the written contract attached to her proposed third amended complaint did not incorporate, or even refer to, any portion of the SSSFA.

The court entered judgment on June 26, 2015. Kopp filed a timely notice of appeal.

**DISCUSSION**

1. *The Court Properly Granted Summary Adjudication as to the CLRA and Conversion Claims*

a. *Standard of review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286;

6

*Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter*, at p. 618.) We review a summary adjudication ruling under the same standards. (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 636; *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 327.)

A defendant may move for summary judgment on the ground there is an affirmative defense to the action. (Code Civ. Proc., § 437c, subds. (o)(2), (p)(2); see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*) [statute of limitations is an affirmative defense].) Once the defendant meets the burden of establishing all the elements of the affirmative defense, the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense. (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484-1485 [when a defendant moves for summary judgment, "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense"]; *Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 806-807 [once defendant establishes the existence of an affirmative defense, burden on summary judgment shifts to the plaintiff to produce evidence establishing a triable issue of material fact refuting the defense]; see *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830.)

b. *Governing law*

The statue of limitations, a legislatively prescribed time period to bring a cause of action, exists "to promote the diligent assertion of [the] claim[], ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed." (*Aryeh, supra,* 55 Cal.4th at p. 1191; accord, *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246.) For both conversion claims and claims under the CRLA, the governing limitation period is three years from the time the claim has accrued. (Civ. Code, § 1783 [CLRA], Code Civ. Proc., § 338, subd. (c) [conversion]; see generally Code Civ. Proc., § 312 [an action must be "commenced within the periods prescribed in this title, after the cause of action shall have accrued"].)

7

Traditionally, a claim accrues "'"when [it] is complete with all of its elements"—those elements being wrongdoing [or breach], harm, and causation.'" (*Aryeh, supra,* 55 Cal.4th at p. 1191; accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 (*Howard Jarvis*).) "This is [known as] the 'last element' accrual rule . . . ." (*Aryeh,* at p. 1191; see *ibid.* ["ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action"]; *Howard Jarvis,* at p. 815 [same]; *Quarry v. Doe I* (2012) 53 Cal.4th 945, 960.)

c.  *Kopp's CLRA and conversion claims are time-barred*

Kopp contends DTD failed to meet its burden or, at a minimum, triable issues of fact exist as to whether her property was, in fact, sold on March 24, 2010 or at some later date. However, the trial court found DTD had presented evidence establishing Kopp knew DTD "was asserting a lien over plaintiff's property in storage in February 2010. The three-year statute of limitations . . . expired three years later in February 2013." That is, the court necessarily found Kopp suffered actual injury when DTD placed a lien on her property and denied her any access to it. (See generally *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751-752 [cause of action does not begin to accrue until plaintiff suffers actual injury]; *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 570-572 [same]; see also *Prakashpalan v. Engstrom*, *Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1135 [elements of conversion are plaintiff's ownership or right to possess property at time of conversion; defendant's conversion by a wrongful act or disposition of those rights of ownership or possession; and damage]; *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1022 [elements of CLRA claim include employment of deceptive, illegal or unfair business practices resulting in damage to consumer]; Civ. Code, § 1770, subd. (a) [CLRA violation includes "(14) [r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law"].)  Kopp does not address this finding.  (See *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 ["[o]n review of a summary judgment, the appellant has the

8

burden of showing error, even if he or she did not bear the burden in the trial court"]; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766-767 [same].)

In addition, DTD demonstrated, and the court found as an undisputed fact, Kopp's property was sold in March 2010. Kopp has not demonstrated that finding was erroneous. Anderson's uncertainty about whether Tomisser had been employed at DTD in March 2010, particularly when he did not join the company until 2014, does not undermine Tomisser's declaration or raise a triable issue of material fact as to the date of sale. Moreover, Tomisser's declaration was not the only evidence of sale. In addition, the notices of lien sent to Kopp and publication of the lien sale notice in the newspaper identified March 24, 2010 as the sale date, creating at least a reasonable inference the property was sold on that date; and Kopp failed to provide any material evidence to rebut that inference. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 [on summary judgment trial court considers the evidence presented "and 'all' of the 'inferences' reasonably drawn therefrom"]; Evid. Code, § 600, subd. (b) ["[a]n inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action"].)[3] To the contrary, Kopp

---

[3]    Kopp argues on appeal, as she did in her opposition to the motion for summary judgment/summary adjudication, the absence of records confirming the sale was sufficient to raise a triable issue of material fact, particularly when such records were required by DTD's procedures. The absence of business records relating to an incident or condition when such records are routinely kept in the ordinary course of business could very well raise a material factual question as to whether the incident or condition had occurred. (See generally Evid. Code, § 1272, subd. (b) [absence of business "record of an asserted act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the nonoccurrence of the act or event . . . if: [¶] (a) [i]t was in the regular course of that business to make records of all such acts, conditions, or events at or near the time of the act, condition, or event and to preserve them; and [¶] (b) The sources of the information and method and time of preparation of the records of that business were such that the absence of a record of an act, condition, or event is a trustworthy indication that the act or event did not occur"].)

However, DTD's written procedures for conducting lien sales, on which Kopp relies, are dated 2011, after the sale had occurred; and Anderson testified he did not know the procedures that were in place prior to 2011. Absent some evidence as to the records

conceded in her complaint the sale had occurred in March 2010. (See *Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 487 ["'"[a] defendant moving for summary judgment may rely on the allegations contained in plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a mater and have the effect of removing it from the issues." [Citations.]' [Citation.] The admissions may not be contradicted in opposing summary judgment"]; *Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [plaintiff bound by allegations of complaint as to when disability occurred; summary judgment properly granted on statute of limitations grounds].) Thus, Kopp failed to establish any triable issue concerning the date of sale.

> d. *Neither the delayed discovery rule nor the doctrine of equitable estoppel precluded summary adjudication*

Kopp also contends, even if the property had been sold on March 24, 2010, the court erred in failing to consider, and give her the benefit of, the delayed discovery rule. Under that common law rule, a cause of action accrues when the plaintiff either actually discovers the injury or could have discovered the injury through the exercise of reasonable diligence. (*Aryeh, supra*, 55 Cal.4th at p. 1192; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807; see also *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1295 [under CLRA, statute of limitations runs "from the time a reasonable person would have discovered the basis for a claim"].)

Kopp asserts she neither knew nor should have known her property had been sold on March 24, 2010 because DTD never provided an accounting of the proceeds from the sale or any confirmation the sale had occurred as scheduled. However, as discussed, Kopp admitted in her deposition she received notice in February 2010 the sale would take

---

DTD routinely kept in the ordinary course of business, the absence of after-sale records in this case is insufficient, by itself, to defeat summary adjudication on the narrow ground of statute of limitations. (See *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 892 ["[a]n inference must be reasonable to raise a triable issue of material fact on summary judgment"; speculation an incident occurred or did not occur "is not evidence" and is insufficient to defeat summary judgment].)

place on March 24, 2010 unless she paid her bill.  Kopp had, at the very least, notice that her property would be sold on that date and a corresponding duty to investigate and timely pursue her claim rather than waiting for additional information.  (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110, 1111 ["Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."  "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."].)

Kopp's reliance on the doctrine of equitable estoppel is also misplaced.  (See *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152-1153 [""'[w]here the delay in commencing action is induced by the conduct of the defendant [the statute of limitations] cannot be availed of by him as a defense"'"]; accord, *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1785.)  Generally, four elements must be present to apply the doctrine of equitable estoppel:  ""'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."'"  (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37; accord, *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359.)

Kopp presented no evidence DTD did anything to induce Kopp's forbearance in filing suit.  Although inaction may give rise to an estoppel when a duty to speak is imposed by statute or regulation (*People v. Ocean Shore Railroad, Inc.* (1948) 32 Cal.2d 406, 421-422; *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1268), DTD satisfied that duty when it informed Kopp of the lien and sale, notice Kopp admitted she received.  DTD's unresponsiveness to Kopp's after-sale telephone calls or failure to give further notice after the sale is simply not enough, as a matter of law, to justify application of equitable estoppel in this case.  (Cf. *Battuello v.*

11

*Battuello* (1998) 64 Cal.App.4th 842, 847 [equitable estoppel applied where defendant made express promises during settlement negotiations that induced plaintiff's forbearance from filing suit within the applicable limitations period]; see generally *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266 [although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn, the question whether estoppel applies is one of law].)

Finally, Kopp contends the court erred in granting summary adjudication without citing its reasons as required under the governing statute. (See Code Civ. Proc., § 437c, subd. (g) [upon grant of summary judgment or summary adjudication court shall specify its reasons for order].) Contrary to Kopp's contention, the trial court's five-page order explained in detail the reasons it found her CLRA and conversion claims were time-barred. Although the court did not use the words "estoppel" or "delayed discovery" directly in its written order, it plainly considered and rejected both, finding Kopp knew or should have known of her claims as early as February 2010, and at the latest, by March 24, 2010 when her property was sold; thus her claims, filed in July 2013, were time-barred. There was no error.

2. *The Trial Court Did Not Err in Denying Kopp Leave To Amend Her Complaint*
a. *Governing law and standard of review*

The trial court "in furtherance of justice" may allow amendment of a pleading. (Code Civ. Proc., § 473, subd. (a)(1).) There is a strong policy in favor of liberally granting leave to amend. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296.) Typically, leave should be granted unless it would prejudice the defendants. (*Ibid.*) However, if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend whether or not there is any prejudice. (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1124; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230.)

We review the trial court's decision to grant or deny leave to amend for abuse of discretion and disturb that decision only if the trial court exercised its discretion in an

arbitrary or capricious manner. (*Mesler v. Bragg Management Co., supra,* 39 Cal.3d at p. 296; *Foxborough v. Van Atta, supra,* 26 Cal.App.4th at p. 230.)

b. *Kopp's proposed third amended complaint failed to state a cause of action for breach of written contract*

Kopp contends the court erred in denying her leave to amend her complaint to state a claim for breach of written contract, which, she asserts, would be timely under the applicable four-year statute of limitations. (See Code Civ. Proc., § 337, subd. 1.) Kopp does not identify a particular provision of the written contract she alleges was breached. Instead, she contends DTD violated various provisions of the SSSFA[4] and argues the SSSFA's provisions are implied "by operation of law" in every self-service storage contract.

i. *The SSSFA*

The SSSFA, based on a model developed by the National Self-Service Storage Facility Association, was enacted in 1981 "to provide self-storage facility owners with 'an effective remedy against defaulting customers.'" (*Vitug v. Alameda Point Storage, Inc.* (2010) 187 Cal.App.4th 407, 415; see Assem. Com. on Judiciary, Assem Bill No. 750 (1981-1982 Reg. Sess.), as amended May 11, 1981, p. 4.) By its terms the

---

[4] In particular, Kopp alleged: (1) DTD (or its predecessor-in-interest) failed to present the contract to her 72-hours before pick-up of her goods as required under the SSSFA (see Bus. & Prof. Code, § 21701.1, subd. (a)(5) ["[t]he owner, operator or carrier shall disclose to the customer in advance the following information regarding the container transfer service offered, in a written document separate from others furnished at the time of disclosure"]; subd. (a)(5)(G) ["[t]he disclosure of terms and conditions required by this subdivision, and the rental agreement, shall be received by the customer a minimum of 72 hours prior to delivery of the empty individual storage container"]); (2) the contract failed to include a space for her to put an additional addressee to receive notice of lien (Bus. & Prof. Code, § 21712, subd. (b) ["[t]he provisions of this chapter shall not apply, and the lien authorized by this chapter shall not attach, unless the rental agreement requests, and provides space for, the occupant to give the name and address of another person to whom the preliminary lien notice and subsequent notices required to be given under this chapter may be sent"]); and (3) DTD charged unreasonable late fees in excess of the limits authorized under the SSSFA (see Bus. & Prof. Code, § 21713.5, subd. (b) [authorizing imposition of "reasonable late fee" for late payment and authorizing maximum amount of fee, depending on the monthly rent]).

13

SSSFA requires each contract for a rental or lease of individual storage space to be in writing (Bus. & Prof. Code, § 21712, subd. (a)) and to inform the renter that the property will be subject to a lien and may even be sold to satisfy the lien if rent or other charges remain unpaid for 14 consecutive days. (Bus. & Prof. Code, § 21712, subd. (a).) It also identifies the conditions that must occur and the procedures an owner of a self-storage facility must follow before the self-storage facility may recover the storage container, impose a lien on the goods stored and sell or otherwise dispose of the goods. (See Bus. & Prof. Code, § 21700 et seq.)

Although nothing in the SSSFA expressly authorizes, or evidences a legislative intent to permit, a private right of action for violation of its terms, that does not mean a party who is aggrieved by a violation of the SSSFA is without a remedy. To the contrary, in addition to formally objecting to the sale and compelling a noticed hearing to determine the propriety of the lien and sale (see Bus. & Prof. Code, §§ 21704, 21705) and seeking an injunction or other equitable relief, a renter aggrieved by the self-storage facility's violation of the SSSFA has other statutory and common law remedies, including without limitation and when appropriate, a cause of action under the CLRA and common law claims for trespass or conversion. (See *Vitug v. Alameda Point Storage, Inc., supra,* 187 Cal.App.4th at p. 415.)

To this list of potential remedies for a SSSFA violation, Kopp seeks to add a cause of action for breach of written contract, whether or not the SSSFA is expressly incorporated into the contract. We have serious doubt as to this theory of liability, but we need not resolve that question now because Kopp failed to plead, and cannot amend her complaint to plead, essential elements of a cause of action for breach of written contract.

ii. *Kopp failed to allege she performed under the written contract or that her performance was excused*

To plead a cause of action for breach of written contract, a plaintiff must allege, in addition to the existence of a written contract, breach, causation and damage, that he or she performed under the contract or that his or her own performance was excused. (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1387; see *ibid.* ["'it is elementary that

14

one party to a contract cannot compel another to perform while he himself is in default'"]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489 [same].) Kopp did not allege she had performed her obligations under the contract or that her performance was excused, nor, in light of her own deposition testimony, can she amend her complaint to do so.[5] Indeed, Kopp admitted she paid nothing for the storage of her goods after November 2009.

Given the nature of Kopp's default, none of the purported breaches she has identified excused her own performance under the contract. For example, Kopp asserts DTD charged a late fee in excess of that permitted by the SSSFA. However, the purportedly excessive late fee did not excuse Kopp's own failure to pay the sums otherwise authorized and required for the rental storage. (See *Hale v. Sharp Healthcare, supra,* 183 Cal.App.4th at p. 1388 [breach of contract claim properly dismissed; even if Hale were excused from paying the portion of her bill that represented "grossly excessive rates," she did not allege she paid the reasonable value of services or that Sharp did anything to prevent her from paying].)

Equally unpersuasive is Kopp's allegation that DTD's failure to include in the contract a space for a secondary addressee constituted a breach of contract. The statute appears to provide only that a violation of this provision prevents the storage company from relying on its benefits to obtain the lien and sell the property (see Bus. & Prof. Code, § 21712, subd. (b) [failure to include provision in contract removes contract from benefits of SSSFA]). In any event, given Kopp's admission she received the notices for nonpayment and notices of lien and sale, she suffered no injury as a result of this violation. (See *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [damage is essential element of breach of contract claim]; *Hamilton v. Greenwich Investors XXVI,*

_____

[5] Although the trial court focused on the fact the SSSFA provisions at issue were not incorporated into the contract, not whether Kopp had adequately alleged she performed or her performance was excused, we may affirm a trial court judgment on any correct basis presented by the record. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268; *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)

*LLC* (2011) 195 Cal.App.4th 1602, 1614.)  Moreover, as discussed, Kopp has not, and cannot, allege that her own performance was excused.

Similarly, DTD's predecessor's failure to provide a copy of the contract 72 hours in advance perhaps precluded DTD from claiming the benefits of the SSSFA or, at most, made the contract voidable at Kopp's election.  Under no circumstances, however, could this violation of the statute give rise to an affirmative claim for breach of contract.

In sum, the trial court did not err in denying Kopp's request for leave to amend her complaint to state a cause of action for breach of written contract.

## DISPOSITION

The judgment is affirmed.  Door to Door Storage is to recover costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.