Filed 5/23/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOSHUA NARANJO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DOCTORS MEDICAL CENTER OF MODESTO, INC.,<br><br>    Defendant and Respondent. | F083197<br><br>(Super. Ct. No. CV-21-001363)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  John Mayne, Judge.

Carpenter Law, Gretchen Carpenter; Law Office of Barry Kramer and Barry L. Kramer, for Plaintiff and Appellant.

Norton Rose Fulbright, Jeffrey B. Margulies, Robin D. Ball, Kevin C. Mayer and Jacqueline C. Karama for Defendant and Respondent.

-ooOoo-

Plaintiff and appellant Joshua Naranjo brought this class action lawsuit against defendant and respondent Doctors Medical Center of Modesto, Inc., doing business as Emanual Medical Center (Medical Center) alleging, among other things, that Medical

1.

Center violated provisions of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) in connection with Medical Center's emergency room billing practices. In particular, Naranjo alleged Medical Center's practice of charging him (and other similarly situated persons) an undisclosed "Evaluation and Management Services Fee" (EMS Fee) "without any notification of its intention to charge … such a Fee … and without any agreement to pay for such separate fee" was an "unfair, deceptive, and unlawful practice" in violation of these statutes.

The trial court sustained Medical Center's demurrer to each cause of action in Naranjo's first amended complaint (FAC) without leave to amend and entered a judgment of dismissal. On April 28, 2023, we filed an opinion reversing the judgment, concluding Naranjo had stated valid causes of action under the UCL and CLRA and for declaratory relief based on Medical Center's alleged failure to apprise prospective emergency room patients of the EMS Fee, and directed the court, on remand, to consider anew any future motion by Naranjo to amend his FAC to state a breach of contract cause of action. The California Supreme Court granted review.[1]

On February 26, 2025, the Supreme Court transferred the case back to this court and directed us to vacate our decision and reconsider the matter in light of its ruling in *Capito v. San Jose Healthcare System, LP* (2024) 17 Cal.5th 273 (*Capito*), in which it held "Hospitals do not have a duty under the UCL or CLRA, beyond their obligations under the relevant statutory and regulatory scheme, to disclose EMS fees prior to treating emergency room patients." (*Id.* at p. 278.)

Having reconsidered the matter in light of *Capito*, we reverse the judgment. We conclude: (1) Naranjo's claims are barred to the extent they are premised on a contention

---

[1] *Naranjo v. Doctors Medical Center of Modesto, Inc.* (2023) 90 Cal.App.5th 1193 [rev. granted July 26, 2023, opn. vacated Feb. 26, 2025, S280374].

that Medical Center had a duty (beyond those required under relevant statutes and regulations) to disclose its intent to charge prospective emergency room patients an EMS Fee prior to providing them emergency care treatment; (2) Naranjo has otherwise stated a valid contract-based cause of action for declaratory relief to determine his payment obligations under the Medical Center's "Consent for Treatment and Conditions of Admission" (COA) (boldface and some capitalization omitted); (3) Leave to amend should have been granted, and Naranjo shall be permitted to amend his FAC to state, if he is able, causes of action for breach of contract and violations of the UCL and CLRA subject to parameters stated in this opinion.

In addition, we conclude Naranjo's supplemental briefing violates California Rules of Court, rule 8.200(b)(2) to the extent he argues he should be permitted to amend his FAC to state alternative UCL and CLRA causes of action based on allegations the EMS Fee is unconscionable (see Civ. Code, § 1770, subd. (a)(19)). Consequently, we do not reach the issue and leave it to the trial court to determine whether leave to amend to state these new UCL and CLRA claims should be granted in the event Naranjo seeks leave to amend in that regard.

### FACTUAL AND PROCEDURAL BACKGROUND

*Allegations of the First Amended Complaint and Matters Judicially Noticed*

The operative complaint in this matter is Naranjo's FAC. We set forth below relevant allegations and contentions contained in the FAC.

"On or about August 15, 2019, [Naranjo] received emergency treatment/services at [Medical Center] …." He signed the Medical Center's COA but was never warned or notified that Medical Center would charge him an EMS Fee "on top of the individual charges for each item of treatment and services provided." He alleges the COA "contained no agreement for [him] to pay a separate EMS Fee" and he did not know Medical Center would add the EMS Fee to his bill.

3.

"[Medical Center's] summary billing statements are not itemized and do not list items separately." As a result, "most emergency room patients never even realize they have been charged a separate EMS Fee, even after their visit." Medical Center's EMS Fee is "set at one of five levels, determined after discharge, based on an internally developed formula known exclusively to [Medical Center]." "[F]or those patients who do request and receive an itemized billing statement, EMS Fees are listed only as ER ROOM LEVEL [I-V], which does not inform [them] that this is a separate charge simply for receiving treatment in the emergency room."

Naranjo alleges, on information and belief, his initial billing statement "did not include an itemization of treatment and services received." He subsequently requested and received an itemized billing statement from Medical Center which included the EMS Fee. "[T]he EMS Fee was designated as 40100038 ER ROOM LEVEL IV, which hides the fact that the EMS Fee is a separate fee not based on any specific item of treatment or service." Naranjo was "shocked and dismayed" upon learning an EMS Fee in the amount of $8,833.35 had been added to his bill, which was "designed to cover overhead and operational expenses of [Medical Center], such as … general staffing, administrative, equipment, and supply costs incurred in operating an emergency room on a 24-hour, 7 day a week basis."

Medical Center's form COA "[does] not describe, mention or inform emergency care patients of [Medical Center's] intention to add" the EMS Fee to a patient's bill and does not "contain a promise or agreement by a patient to pay" the fee. "Had [Naranjo] been informed about the [EMS] Fee prior to incurring treatment …, [he] would have left and sought less expensive treatment elsewhere."

"Knowledge that [Medical Center] charges this separate EMS Fee would be a substantial factor in a prospective emergency care patient's decision to remain at [Medical Center] and proceed with treatment which … is the precise reason why

[Medical Center] intentionally conceals such fees." Medical Center's "failure to disclose its EMS Fees contributes to a lack of pricing transparency and lack of informed consent by patients who, despite an absolute right to know about this significant charge prior to treatment, are unaware of such EMS Fees or how they are determined."

Naranjo acknowledges Medical Center, "like most hospitals, maintains a price list, called a Charge Description Master, or Chargemaster, which is a uniform schedule of charges represented by [Medical Center] as its gross billed charge for a given service or item, regardless of payer type," citing Health and Safety Code section 1339.51. Medical Center's chargemaster (Chargemaster) is on file with the Department of Health Care Access and Information (HCAI), formerly known as the Office of Statewide Health Planning and Development,[2] but it "consists of over 4,000 individual line items of treatment/services and has nothing to do with what items will appear on a patient's billing statement." "[T]he inclusion of an EMS Fee on a massive price list with over 4000 individual items listed provides no notice to a patient that an EMS Fee will be added to an emergency patient's billed charges."

Naranjo clarifies his claim is "not that [Medical Center] fail[ed] to list an EMS Fee as a line item in the [Medical Center's] published Chargemaster, or that [Medical Center] fail[ed] to list the gross charge of such EMS Fees in [its] published Chargemaster, but rather the fact that [Medical Center] gives no notification or warning that it charges a separate surprise EMS fee for an emergency room visit, and there is no agreement to pay for such Fee in [the COA] which a patient is asked to sign."

Unlike other fees listed on the Chargemaster, an EMS Fee "is known in advance and automatically applied to the charges for emergency room patients" whereas inclusion of any other Chargemaster fee on an emergency room patient's hospital bill "is solely

---

**2** Assembly Bill No. 133 (2021–2022 Reg. Sess.) § 31.

dependent on which individual items of treatment and services are ordered for the … patient and thus cannot be known by [Medical Center] in advance."

In his first cause of action for declaratory relief, Naranjo alleges an actual controversy exists between him and Medical Center concerning (1) the parties' rights and duties under the COA—specifically whether Naranjo is obligated to pay the EMS Fee. Naranjo seeks a declaration that Medical Center's practice of charging undisclosed EMS Fees is not authorized by Medical Center's COA; and (2) the parties' rights and duties with respect to the disclosure of information concerning EMS Fees—specifically whether Medical Center owes a duty to its emergency room patients to disclose "the existence of and amounts of its EMS Fees … prior to providing [them] treatment triggering such a charge." Naranjo seeks a declaration that Medical Center has a duty to make such disclosures prior to treatment.

In his second cause of action for violation of the UCL, Naranjo alleges, among other things, he did not expect to be charged, and relied on not being charged, an undisclosed "substantial and unreasonable separate EMS Fee"; he did not agree to pay the EMS Fee, and he would not have accepted treatment from Medical Center had he been informed the EMS Fee would be charged. He alleges Medical Center's policy of charging its emergency room patients an undisclosed EMS Fee that they have not agreed to pay, and which would be material to their decision on whether to accept treatment, violates the UCL.

Finally, in his third cause of action for violation of the CLRA, Naranjo contends, among other things, Medical Center's practice of charging EMS Fees without advance notice and "without any agreement to pay such a Fee" violates subdivision (a)(5) and (14) of Civil Code section 1770 of the CLRA.

6.

Naranjo alleges he has suffered economic injury as a result of Medical Center's EMS Fee billing practices and seeks damages and restitution in addition to declaratory and injunctive relief.

The trial court took judicial notice of the COA upon Medical Center's request and Naranjo's stated non-objection. In the discussion section of this opinion, we discuss relevant provisions of the COA and additional allegations of the FAC as necessary to address the parties' contentions on appeal.

*Procedural Background—Trial Court Proceedings*

On March 12, 2021, Naranjo filed his original class action complaint against Medical Center. On April 27, 2021, Naranjo filed the FAC seeking the same or similar relief and alleging the same or similar statutory violations as alleged in his original complaint. The FAC was filed before Medical Center filed any responsive pleading or appearance.

On May 28, 2021, Medical Center demurred to each cause of action alleged in the FAC on grounds Naranjo failed to state facts sufficient to state a cause of action (Code Civ. Proc., § 430.10, subd. (e)). Naranjo opposed the demurrer.

On July 7, 2021, the trial court heard Medical Center's demurrer. At the hearing, Naranjo's counsel made a specific request that her client be granted leave to amend the FAC to state a breach of contract cause of action. At the conclusion of the hearing, the trial court issued minute orders sustaining the demurrer to each cause of action without leave to amend.

On August 11, 2021, judgment was entered against Naranjo and in favor of Medical Center. Naranjo timely appealed.

*Procedural Background—Appellate Proceedings*

In April 2023, this court issued an opinion concluding that Naranjo had stated viable claims under the UCL, CLRA and declaratory relief causes of action, and

7.

reversing the judgment of dismissal.  We also ordered that, on remand, the trial court would have discretion to consider a motion by Naranjo to amend the FAC to state a cause of action for breach of contract should Naranjo choose to file one."

Medical Center petitioned for review.  In July 2023, the California Supreme Court granted the petition.

On February 26, 2025, the Supreme Court transferred the case back to this court with directions to vacate our decision and reconsider the case in light of its decision in *Capito*.

## DISCUSSION

### I.     *CAPITO v. SAN JOSE HEALTHCARE SYSTEMS, LP*

The alleged facts and procedural history of *Capito* are similar in many respects to those of the case before us.  The *Capito* plaintiff had been an emergency room patient at defendant hospital and sued the hospital for violations of the UCL and CLRA, and for declaratory and injunctive relief, in connection with the hospital's practice of charging emergency room patients a separate EMS Fee without notification or warning.  (*Capito*, *supra*, 17 Cal.5th at p. 282.)  After two rounds of demurrers, the trial court sustained a demurrer to the plaintiffs' second amended complaint without leave to amend.  (*Ibid*.) The Court of Appeal affirmed.[3]

On review, the Supreme Court upheld the Court of Appeal's judgment, basing its decision on what it described as "[a]n extensive scheme of state and federal law" that "obligates hospitals to make specific disclosures about the prices of medical services, including fees for evaluation and management services (EMS) for emergency room

---

[3]     The California Supreme Court granted review in order to resolve a split of authority created by holdings in our prior decision and in *Torres v. Adventist Health System/West* (2022) 77 Cal.App.5th 500, on the one hand, and *Gray v. Dignity Health* (2021) 70 Cal.App.5th 225 (*Gray*) and *Saini v. Sutter Health* (2022) 80 Cal.App.5th 1054 on the other hand.

8.

patients." (*Capito*, *supra*, 17 Cal.5th at p. 277 [considering the California Payers' Bill of Rights (Health & Saf. Code, § 1339.50 et seq.); Health & Saf. Code § 1317; Medicare requirements (42 U.S.C. § 300gg-18(e)); the federal Emergency Medical Treatment and Active Labor Act (42 U.S.C. § 1395dd); and related regulations].) The court remarked, "The 'California Legislature, the United States Congress, and numerous rulemaking bodies have already decided what pricing information to make available in a hospital's emergency room. Just as importantly, they have decided what *not* to include in those requirements. The reason for this extensive statutory and regulatory scheme is to strike a balance between price transparency and dissuading patients from avoiding potentially life-saving care due to cost.' " (*Capito, supra,* at p. 283.)

The *Capito* court stated the UCL " ' "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent" ' " (*Capito*, *supra*, 17 Cal.5th at p. 284) and went on to consider whether the plaintiff's allegations, accepted as true for purposes of demurrer, established that the hospital's conduct met any of those three types of "unfair" competition. (*Id.* at pp. 283–292.) It first considered whether the hospital's "failure to inform patients of the EMS fee in the emergency room before services are provided is 'unfair' under the UCL." (*Id.* at p. 283.) In doing so, it rejected the plaintiff's contention that the hospital's " 'practices offend established public policies, and are immoral, unethical, oppressive, and unscrupulous.' " (*Id.* at p. 284.) It held "that where a hospital has complied with state and federal disclosure requirements, including listing EMS fees in the chargemaster and informing emergency room patients of the availability of the chargemaster, the lack of further disclosure of EMS fees to such patients in the emergency room before treatment is not 'unfair' under the UCL." (*Id.* at p. 287.)

Next, the *Capito* court considered the plaintiff's claim that the hospital "violated the CLRA because it has 'exclusive knowledge' of the material fact that an EMS fee

9.

would be charged to her, and that she had no way of knowing about that fact"—which the plaintiff argued "forms the basis for an 'unlawful' UCL claim."[4] (*Capito*, *supra*, 17 Cal.5th at p. 288.)  The court assumed, without deciding, that liability under the CLRA may be triggered by a failure to disclose material facts and concluded the plaintiff's allegations failed to establish that the hospital's conduct was unlawful "by virtue of [the hospital] having exclusive knowledge of the EMS fee or [the plaintiff] lacking reasonable access to the information." (*Capito, supra,* at pp. 289, 291.)  It rejected the allegation that the hospital had exclusive knowledge of the EMS fee or that it " 'actively conceal[ed]' that fact" because the hospital (1) disclosed EMS fees in its chargemaster and list of 25 common procedures, (2) submitted those pricelists to the HCAI, which published them on its website, (3) used industry-standardized billing codes in describing its fees in those lists, (4) referred to the chargemaster in the admissions form signed by the plaintiff and provided her an opportunity to inquire about costs of treatment at the time of registration, and (5) made the chargemaster available at the emergency room and posted conspicuous signs advising of its availability. (*Id.* at p. 289.)

Finally, the high court considered whether the hospital's nondisclosure of the EMS fee prior to emergency room treatment was fraudulent or deceptive under the UCL. (*Capito*, *supra*, 17 Cal.5th at p. 291.)  The court concluded the hospital's conduct was not fraudulent or likely to deceive the public for the same reasons it concluded the hospital's conduct was not unfair or unlawful. (*Ibid*.)  It wrote, "[the hospital's] compliance with the regulatory scheme promotes price transparency for consumers to the extent contemplated by state and federal authorities, who sought to balance that concern against the risk of dissuading patients from seeking emergency care." (*Ibid*.)

---

[4]      The UCL " ' " 'borrows' violations of other laws and treats them as unlawful practices" that the [UCL] makes independently actionable.' " (*Capito*, *supra*, 17 Cal.5th at p. 288.)

Ultimately, the *Capito* court held "hospitals do not have a duty under the UCL or CLRA, beyond what is required by the statutory and regulatory scheme, to disclose emergency room EMS fees" prior to treating emergency room patients[5] and disapproved of our prior opinion[6] and *Torres v. Adventist Health System/West* (2022) 77 Cal.App.5th 500 "to the extent they are inconsistent with [its] opinion." (*Capito*, *supra*, 17 Cal.5th at p. 292.)

## II. CALIFORNIA RULES OF COURT, RULE 8.200(B)(2)

Following the Supreme Court's decision in *Capito* and the transfer of Naranjo's case to this court, the parties submitted supplemental briefs and supplemental responding briefs pursuant to California Rules of Court, rule 8.200(b).

Medical Center contends Naranjo's supplemental briefing violates California Rules of Court, rule 8.200(b)(2) (hereafter, Rule 8.200(b)(2)) to the extent Naranjo has

---

[5]     In its conclusion, the *Capito* court stated its holding merely as "hospitals do not have a duty under the UCL or CLRA, beyond what is required by the statutory and regulatory scheme, to disclose emergency room EMS fees." (*Capito*, *supra*, 17 Cal.5th at p. 292.)  It is clear, however, that the Supreme Court's holding was limited to whether hospitals have a duty to disclose such fees *prior to providing emergency care to a patient*. Elsewhere in the opinion, it stated, "Hospitals do not have a duty under the UCL or CLRA, beyond their obligations under the relevant statutory and regulatory scheme, to disclose EMS fees *prior to treating emergency room patients*[,]" (*id.* at p. 278, italics added) and "[w]e therefore hold that where a hospital has complied with state and federal disclosure requirements, including listing EMS fees in the chargemaster and informing emergency room patients of the availability of the chargemaster, the lack of further disclosure of EMS fees to such patients in the emergency room *before treatment* is not 'unfair' under the UCL." (*Id.* at p. 287, italics added.)  Moreover, the statutory and regulatory scheme, and the underlying policies upon which the *Capito* court based its decision, concerned only information that a hospital may, and may not, discuss with patients *prior to administering treatment*. (*Id.* at pp. 285–286.)  As the court stated, " '[t]he reason for this extensive statutory and regulatory scheme is to strike a balance between price transparency and dissuading patients from avoiding potentially life-saving care due to cost.' "  (*Id.* at p. 283.)

[6]     (*Naranjo v. Doctors Medical Center of Modesto, Inc., supra,* 90 Cal.App.5th 1193 [rev. granted July 26, 2023, opn. vacated Feb. 26, 2025, S280374])

11.

rehashed arguments previously briefed on appeal (i.e., arguments that he should be permitted leave to amend the FAC to state a breach of contract cause of action and that he has sufficiently alleged contract-based UCL, CLRA and declaratory relief causes of action), and that he is asserting new claims not previously raised (i.e., a claim the EMS Fee is unconscionable under the CLRA and UCL).  We agree with Medical Center only to the extent Naranjo has raised new claims of unconscionability.

Rule 8.200(b)(2) provides: "Supplemental briefs must be limited to matters arising after the previous Court of Appeal decision in the cause, unless the presiding justice permits briefing on other matters."  (Rule 8.200(b)(2).)  Our presiding justice did not permit briefing on other matters.

In *Dahms v. Downtown Pomona Property* (2009) 174 Cal.App.4th 708, the court, relying on Rule 8.200(b)(2), declined to consider "arguments that could have been raised in the original briefs … but were not raised until the supplemental briefs."  (*Dahms, supra,* at p. 711, fn. 1.)  Other courts have ruled similarly.  (*People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1033, fn. 10 [new argument raised for the first time in supplemental brief following transfer from the Supreme Court not considered]; *Muldrow v. Surrex Solutions Corp.* (2012) 208 Cal.App.4th 1381, 1398, fn. 17 [declining to consider new issues that could have been raised in appellant's opening brief but which were not, and were, instead, raised for the first time in supplemental briefing following transfer from the Supreme Court].)

Naranjo never requested the trial court grant him leave to amend his FAC to state claims of unconscionability under the CLRA and UCL.  Similarly, he never raised the issue in his original opening and reply briefs on appeal.  Thus, we conclude Naranjo's supplemental briefs violate Rule 8.200(b)(2) to the extent he now seeks to raise new

12.

claims of unconscionability not previously raised at the trial court level or on appeal. Consequently, we do not consider those arguments.[7]

We do not, however, view Naranjo's remaining discussions as violative of Rule 8.200(b)(2). In *West Adams Heritage Association v. City of Los Angeles* (2024) 106 Cal.App.5th 395 (*West Adams*), the city determined a development project was exempt from environmental review under the California Environmental Quality Act. (*West Adams*, *supra,* at p. 403.) At the trial court level, the appellants made several arguments that the city's determination constituted an abuse of discretion including (1) that "the City failed to find the project was consistent with the applicable redevelopment plan for the project area," and (2) that "the City relied on mitigation measures to conclude" resident activity "on the project's rooftop decks would not cause significant noise impacts." (*Ibid.*) The trial court rejected all of the appellant's challenges. (*Ibid.*) The appellate court reversed, basing its decision solely on the noise mitigation issue and never reaching the redevelopment plan consistency issue. (*Id.* at pp. 403–404.)

On review, the Supreme Court transferred the matter back to the appellate court, and directed it to vacate its decision and reconsider the cause in light of a recent statutory enactment and the high court's decision in another matter. (*West Adams*, *supra*, 106 Cal.App.5th at p. 403.) In supplemental briefing, the appellants reargued the redevelopment plan consistency issue and the city moved to strike the argument under Rule 8.200(b)(2) on grounds the appellants were barred from rearguing "old issues in a supplemental brief." (*West Adams, supra,* at p. 420.) In denying the motion to strike, the *West Adams* court wrote: "Our previous decision expressly noted our noise holding made it unnecessary to address the redevelopment plan consistency issues, and we therefore

---

**7**    Given that we are remanding the case back to the trial court, Naranjo is free to move the court for leave to further amend his governing complaint, and any arguments in support of, or in opposition to, the motion will be considered by the court at that time. We express no opinion on the viability of such claims.

13.

would leave those latter issues 'for another day, should they arise.'  That day has now arrived, as a result of new authorities invalidating our previous noise holding.  The necessity of addressing the redevelopment plan consistency issue thus is a 'matter[ ] arising after the previous Court of Appeal decision.' "  (*Id.* at p. 421; compare with *CDM Investors v. Travelers Casualty & Surety Co* (2006) 139 Cal.App.4th 1251, 1261, fn. 3 [concluding "the Supreme Court's grant-hold-transfer procedure does not allow for reargument" of an issue *addressed in the appellate court's prior decision* and not addressed in the high court's subsequent opinion to vacate and reconsider].)

Here, the situation is more analogous to that in *West Adams* than in *CDM*. Naranjo argued, both before the trial court and in his original opening and reply briefs on appeal, that he should be permitted to amend his FAC to state a breach of contract cause of action.  After we determined Naranjo had stated valid causes of action under the CLRA, UCL and declaratory relief statute, we concluded it unnecessary for us to consider whether the trial court abused its discretion in denying Naranjo leave to amend. Rather, we concluded the better practice was to allow the trial court to consider anew any motion to amend Naranjo might choose to bring.  Thus, we never reached the question of whether Naranjo should have been granted leave to amend to state a breach of contract cause of action.  Nor did we reach the issue of whether Naranjo had stated valid contract-based claims under the UCL, CLRA, or declaratory relief statute, which issues were also raised in Naranjo's original appellate briefs.  In light of the Supreme Court's reversal of our prior opinion and its holding in *Capito*, we now consider it necessary to address these issues.  We conclude Naranjo did not violate Rule 8.200(b)(2) by addressing these issues

14.

in his supplemental briefing, and he did not need to obtain specific permission from the presiding justice to do so.  (*West Adams*, *supra*, 106 Cal.App.5th at p. 421.)[8]

### III. NARANJO CONCEDES *CAPITO* RESOLVES CLAIMS BASED ON MEDICAL CENTER'S ALLEGED DUTY TO DISCLOSE EMS FEES PRIOR TO EMERGENCY CARE TREATMENT

Naranjo acknowledges "the *Capito* decision effectively resolves [his] prior claims under the [UCL] …, the [CLRA] …, and the declaratory judgment statute … based on [Medical Center's] alleged 'duty to disclose' its intent to charge EMS Fees."  Consistent with this position, Naranjo presents no argument that those claims would survive the holding in *Capito*.  We construe Naranjo's statement and his decision not to present

---

[8]    In a footnote, Medical Center wrote: "Should the presiding justice grant permission for such reargument, … Medical Center requests leave to file a brief responding to the merits of [Naranjo's] arguments regarding leave to file a breach of contract claim and the sufficiency of his alleged 'contract-based' causes of action … as well as oral argument."

In *West Adams*, the city made a similar request.  The city was the first to file a supplemental brief and argued the appellants " 'sandbag[ged]' " them and left them " 'no opportunity to respond' " to the appellants' supplemental briefing.  (*West Adams*, *supra*, 106 Cal.App.5th at p. 420.)  In denying the request, the court wrote, "[g]iven that our original opinion expressly and conspicuously deferred the redevelopment plan consistency question 'for another day,' it is disingenuous for [city defendants] to claim they were 'sandbag[ged]' when appellants addressed that question in their supplemental brief.  [City defendants] could have, and should have, addressed that issue in their first supplemental brief."  (*Id.* at p. 421.)

Here, Medical Center was on notice that the issue of whether leave to amend to state a breach of contract cause of action should be granted was an issue that needed to be determined following the Supreme Court's transfer of the case to this court.  In fact, it expressly stated as much in its supplemental briefing.  Medical Center was also aware that Naranjo raised the sufficiency of its alleged contract-based causes of action on appeal and that, following the high court's reversal of our prior decision, the issue remained unresolved.  Medical Center had the opportunity to respond to Naranjo's supplemental arguments in its supplemental responding brief, *which it did*.  That Medical Center may have chosen to limit its response (if, in fact, it did) is not grounds upon which to give it another "bite at the apple" or to order further oral argument.

supporting argument as a concession those claims are not viable under the holding of *Capito*. As a result, we need not discuss these points further. (*Anderson v. United States* (1923) 192 Cal. 250, 251 [concession that point made on appeal is without merit obviates the need for further discussion on the issue]; *Hooper v. Smith* (1916) 30 Cal.App.460, 461 [same].)

Notwithstanding, Naranjo contends "the *Capito* decision does not support, let alone require, dismissal of this case in its entirety." For reasons explained below, we agree.

IV.    *CAPITO* DOES NOT PRECLUDE CAUSES OF ACTION THAT ARE NOT PREMISED ON AN ALLEGED DUTY TO DISCLOSE FEES PRIOR TO EMERGENCY CARE TREATMENT

In support of his contention that the FAC sufficiently states contract-based declaratory relief, UCL, and CLRA causes of action, Naranjo argues, "[b]ecause hospitals do not present their COA contract to emergency room patients until *after* services are provided, the *Capito* Court's 'duty to disclose' holding does not apply with respect to disclosure in a hospital's COA." (Fn. omitted.) Medical Center disagrees and contends the relief Naranjo seeks would "effectively nullify the entire *Capito* opinion and its rationale." We think Naranjo has the better argument.

The issue in *Capito* was whether hospitals were required to provide disclosure of EMS Fees *prior to providing treatment* to a prospective emergency room patient. It did not purport to address disclosures made following treatment. (See fn. 5, *ante*.)

Moreover, Health and Safety Code section 1317 provides, in part: "Emergency services and care shall be rendered without first questioning the patient or any other person as to his or her ability to pay therefor. However, the patient or his or her legally responsible relative or guardian *shall execute an agreement to pay therefor* or otherwise

16.

supply insurance or credit information promptly *after the services are rendered*."**9** (Health & Saf. Code, § 1317, subd. (d), italics added.) Thus, the law allows a hospital and its emergency room patients to discuss payment issues following treatment, and requires those patients to execute an agreement to pay for emergency services rendered.

Thus, to the extent Naranjo has stated (or is able to state) otherwise valid contract-based claims based on events that arose after Medical Center completed its emergency care treatment and not based on an alleged duty of disclosure *prior* to that treatment, such claims would remain actionable and not barred under the holding in *Capito*.

## V.     STANDARD OF REVIEW

"When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action *under any possible legal theory*. [Citations.] Appellate courts treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242 (*Gutierrez*), italics added.) "[I]f we conclude that the complaint does not state a cause of action, 'we must decide whether there is a reasonable possibility

---

**9**      The term "emergency services and care," as used in Health and Safety Code section 1317, is defined by statute, in relevant part, as follows: " 'Emergency services and care' means medical screening, examination, and evaluation by a physician and surgeon, or, to the extent permitted by applicable law, by other appropriate licensed persons under the supervision of a physician and surgeon, to determine if an emergency medical condition or active labor exists and, if it does, the care, treatment, and surgery, if within the scope of that person's license, necessary to relieve or eliminate the emergency medical condition, within the capability of the facility. [¶] … 'Emergency services and care' also means an additional screening, examination, and evaluation by a physician, or other personnel to the extent permitted by applicable law and within the scope of their licensure and clinical privileges, to determine if a psychiatric emergency medical condition exists, and the care and treatment necessary to relieve or eliminate the psychiatric emergency medical condition, within the capability of the facility. (Health & Saf. Code, § 1317.1, subd. (a)(1), (2)(A).)

the plaintiff could cure the defect with an amendment.  [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court has abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Eghtesad v. State Farm General Insurance Company* (2020) 51 Cal.App.5th 406, 411 (*Eghtesad*).)

VI.     JUDICIAL NOTICE

A. *Medical Center's Request for Judicial Notice Is Denied, in Part, and Granted, in Part.*

On appeal, Medical Center requests this court judicially notice the opening brief, reply brief, petition for rehearing, petition for review, and request for an order of depublication in *Gray, supra,* 70 Cal.App.5th 225 (collectively, *Gray* documents).  We deny the request.[10]

---

**10**     Medical Center notes the *Gray* documents were filed by the same attorneys that now represent Naranjo and argues the records are judicially noticeable under Evidence Code sections 452 (records of a state court) and 459 (authority of appellate court to take judicial notice).  Medical Center contends "appellate courts have taken judicial notice of court records in related litigation relevant to the issue before the courts, including briefs filed by the parties."  Medical Center's cited authorities are inapposite.  In each of those authorities, the records in question were directly related to the case and the parties before the court.  (See *Taus v. Loftus* (2007) 40 Cal.4th 683, 725–726 [judicial notice taken of court documents in separate proceeding to determine whether confidential information was taken therefrom]; *S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 331, fn. 3 [judicial notice taken of documents filed in appeal in order for court to consider appeal and related writ proceedings together]; *Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1196 [judicial notice taken of documents related to appellate briefing in criminal case relevant to appeal in related malpractice case]; and *Stein v. Axis Ins. Co*. (2017) 10 Cal.App.5th 673, 685 [judicial notice taken of court documents directly relevant to plaintiffs' claims of whether insurance company violated terms of its policy].)  *Gray* involved an unrelated case and different parties, and there is no suggestion that principles of collateral estoppel apply.  Moreover, in light of Naranjo's concession that *Capito* resolves his claims to the extent they are premised on an alleged *pre-treatment* duty of disclosure, the *Gray* documents do not appear relevant.

18.

Medical Center also requests we judicially notice its 2019 list of 25 common outpatient procedures and 2019 Chargemaster, both of which were filed with OSHPD. We grant this request. (Evid. Code, §§ 452, subd. (h), 453, 459, subd. (a).)

### B. *Naranjo's Request for Judicial Notice Is Denied*

Naranjo requests we take judicial notice of the legislative history of Health and Safety Code section 1339.585 for the sole purpose of "show[ing] that the court in *Gray* ... mischaracterized the legislative history of Health & Safety Code section 1339.585 to suggest that it initially applied to emergency patients, but was later amended to exclude emergency patients." We deny the request.[11]

## VII.   DECLARATORY RELIEF

Naranjo contends he has stated a valid contract-based cause of action for declaratory relief. Specifically, he contends the COA contains an agreement to only pay for "services" and that the EMS Fee is not a service. Medical Center contends the "gravamen of the 'contract-based claims,' as alleged in the complaint, was the lack of disclosure, not that the [COA] did not obligate [Naranjo] to pay the fee." Medical Center also contends the term "services," as used in the COA, is not reasonably susceptible to the construction urged by Naranjo.

We conclude Naranjo has stated a valid declaratory relief cause of action to determine whether the COA obligates him to pay the EMS Fee.

Code of Civil Procedure section 1060 provides, in relevant part:

> "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in

---

[11]    In light of Naranjo's concession that *Capito* resolves his claims to the extent they are premised on an alleged *pre-treatment* duty of disclosure, the legislative history of Health and Safety Code section 1339.585 does not appear relevant.

cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract…. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

In his FAC, Naranjo repeatedly alleges the COA he signed, and which other patients are asked to sign, contains no promise or agreement to pay the EMS Fee. He alleges that, despite the absence of such an agreement or promise, Medical Center charged him, and has a practice of charging its patients, an EMS Fee. He further alleges the "EMS Fee is a separate fee not based on any specific item of treatment or service" and characterizes the EMS Fee, as follows:

"This Evaluation and Management Services Fee is a fee billed to emergency room patients simply for seeking treatment in the emergency room; *it is separate from, independent of, and in addition to, the charges for the individual items of treatment and services provided to a patient. Rather than being tied to the individual items of treatment and services a patient receives in the emergency room, a separate EMS Fee is charged to all patients who receive treatment in the emergency room, regardless of what services and treatment they receive and are charged for.* These EMS Fees, which are basically designed to cover the overhead and Hospital's general staffing, administrative, equipment, and supply costs incurred in operating an emergency room on a 24-hour, 7 day a week basis, invariably come as a complete surprise to unsuspecting emergency room patients." (Italics added.)

Naranjo's declaratory relief cause of action contains the following allegation:

"An actual controversy exists between [Naranjo] and [Medical Center] relating to their respective legal rights and duties under the [COA]. [Naranjo] contends that, under [Medical Center's] [COA], he is not required to pay [Medical Center's] undisclosed EMS Fee. In sharp contrast, [Naranjo] is informed and believes and thereon alleges that [Medical Center] claims its [COA] entitles it to this additional charge and has billed [Naranjo] accordingly. Accordingly, [Naranjo] and members of the Class are entitled to a declaration under Code of Civil Procedure section 1060 as to the construction of [Medical Center's] [COA]. Specifically,

20.

[Naranjo] and members of the Class are entitled to a declaration that [Medical Center's] practice of charging a substantial undisclosed EMS Fee, in addition to the charges for the specific services and treatments provided, is not authorized by [Medical Center's] [COA]."

Although it is true that Naranjo's FAC focuses in large part on the duty to disclose the EMS Fee prior to treatment in the emergency room, Naranjo's contract-based declaratory relief action falls well within the scope of Civil Code section 1060. He has expressly alleged an actual controversy over whether the COA contains an obligation to pay for the EMS Fee.

The COA signed by Naranjo states, in part: "I consent to the admission to the hospital and consent to treatment and procedures that my doctor thinks are needed during this hospitalization …. These may include emergency treatment or services, laboratory procedures, x-ray examinations, medical or surgical treatment or procedures, anesthesia, *and other hospital services* provided to me under the general and special instructions of my physician or surgeon." (Italics added.) It states, "I consent to the *provision of services* by Physicians and independent practitioners …." (Italics added.)

Regarding payment, the COA provides, in part: "I understand payment is due *when services are provided. I agree to promptly pay for all hospital services* in accordance with the regular rates and terms of the hospital…. If I default on *this agreement to pay for services* and my account is referred to a third-party for debt collection, I will pay actual collection-related expenses …." (Italics added.) With regard to the assignment of benefits to Medical Center, the COA states, in part: "I request that payment of authorized benefits be made in my behalf to the hospital *for any service* furnished to me by the hospital…. If the hospital is authorized to bill *for services rendered by physicians or other providers,* I assign payment to the hospital *for the services rendered by these physicians or other providers.* I understand I am *financially responsible for any hospital or other charges not paid according to this assignment* and request …. I understand that *services not covered through my benefits*, as well as any

21.

applicable co-payments and deductibles are my responsibility….” (Italics added.) The term “services” is not defined in the COA.

Naranjo contends the COA only obligates him to pay for services and that the EMS Fee is not a charge for services rendered to the patient. In response, Medical Center contends the term “services” is not reasonably susceptible to a construction that excludes “overhead and … general staffing, administrative, equipment, and supply costs incurred in operating an emergency room on a 24-hour, 7 day a week basis.”

“ ‘ “ ‘When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is “reasonably susceptible” to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?’ ” ’ ” (*Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389–390.) Whether language is reasonably susceptible to a given interpretation is a question of law. (*Curry v. Moody* (1995) 40 Cal.App.4th 1547, 1552.)

In support of its position, Medical Center offers the following definitions for the term “services,” purportedly obtained from the Oxford English Dictionary:[12] “As a verb, ‘service’ is defined as: ‘2. *transitive*. To supply or equip (a person or thing) with something.’; ‘3…. c. *transitive*. To deal with (something) according to an established procedure; to process.’ ‘4. transitive, To meet, supply, or cater for (a need, requirement, etc.).’ [Citation] And as a noun, it is defined as: ‘8.a. More generally: the action of serving someone or something; performance of the duties, role, or function of a servant; work done in obedience to and for the benefit of a master, mistress, etc.’ ‘36. An act of carrying out work or rendering assistance of a particular kind for a customer, client, etc.,

---

[12] The citations provided by Medical Center’s counsel consist of URL codes that require membership to access.

22.

but which is not (primarily) concerned with the manufacture of a commodity or the sale of goods; (esp.) an arrangement to do this as something offered on a commercial basis.' "

Some of the definitions proffered by Medical Center for the noun "service" do not appear to preclude Naranjo's argument that an EMS Fee is not a charge for a service. In addition, other dictionaries have defined the term "service" in ways that might reasonably suggest an EMS Fee is not, in fact, a "service." For example, the term "service," when used as a noun, has been defined as "the work performed by one that serves," "the act of serving," "useful labor that does not produce a tangible commodity—usually used in plural," (Merriam-Webster Dict. Online (2025) <https://merriam-webster.com/dictionary/service> [as of 5/8/25]), "work that someone does or time that someone spends working for an organization." (Cambridge Dict. Online (2025) <https://dictionary.cambridge.org/dictionary/english/service> [as of 5/8/25]), and "work done by an organization or person that does not involve producing goods" (The Britannica Dict. Online (2025) <https://www.britannica.com/dictionary/service> [as of 5/8/25].). The plural term "services," when used as a noun, has been defined as "the particular skills that someone has and can offer to others." (Cambridge Dict. Online <https://dictionary.cambridge.org/ dictionary/english/service> [as of 5/8/25].)

Thus, we conclude the term "services" is reasonably susceptible to the meaning ascribed to it by Naranjo, and Naranjo has stated a valid cause of action for declaratory relief to determine the scope of his contractual obligations under the COA.

VIII.  LEAVE TO AMEND TO STATE A BREACH OF CONTRACT CAUSE OF ACTION

At the hearing on Medical Center's demurrer, Naranjo requested the trial court grant him leave to amend his FAC to state a breach of contract cause of action. Naranjo observes the Supreme Court in *Capito* "did not consider a claim for breach of contract"— a fact acknowledged by Medical Center—and renews his request for leave to amend "to

23.

allege that Medical Center's [COA] … only allows Medical Center to charge (and only obligates patients to pay) for services actually rendered to individual patients" and that Medical Center breached the COA by charging Naranjo an EMS Fee "which is not a fee for services actually provided to him."

Medical Center contends Naranjo cannot credibly allege that EMS Fees are not for "services," which Naranjo is obligated to pay for under the COA—an allegation we addressed in the section VII. of this opinion.  Medical Center further asserts Naranjo did not provide "a sufficient factual basis to meet his burden of showing that the proposed amendment was not futile" and cannot show that he performed, or was excused from performing, his obligations under the contract.

We conclude Naranjo should be given leave to amend his FAC to state, if he can, a breach of contract cause of action.

"Ordinarily, an appellant who seeks leave to amend attempts to show that the trial court's denial of leave to amend was error by showing on appeal what facts could be pleaded to cure defects in the complaint and how they state a cause of action.  [Citation.] But for an original complaint … it has long been the rule that a trial court's denial of leave to amend constitutes an abuse of discretion unless the complaint 'shows on its face that it is incapable of amendment.' " (*Eghtesad*, *supra*, 51 Cal.App.5th at p. 411.)  In such situations, "we focus not on what facts the plaintiff shows he can allege in an amended complaint, but rather on whether anything in the original complaint forecloses amendment." (*Id.* at pp. 413–414.)

Naranjo's FAC was the functional equivalent of an "original complaint."  Naranjo filed suit on March 12, 2021, and amended his complaint, as a matter of right, on April 27, 2021, before Medical Center filed an answer, demurrer, or motion to strike to challenge the allegations.  (See Code Civ. Proc., § 472, subd. (a).)  Consequently, we

review the FAC to determine whether anything in it forecloses an amendment to state a claim for breach of contract. (*Eghtesad*, *supra*, 51 Cal.App.5th at p. 411.)

The elements of a breach of contract claim are: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239.)

In the FAC, Naranjo has alleged the existence of a contract, i.e., the COA. He has alleged the COA obligated him to pay only for services rendered to him, which did not include an obligation to pay the EMS Fee that Medical Center charged him. Allegations that a party to the contract has charged another contracting party more than is allowed under the contract may form the basis of a breach of contract claim. (*Acree v General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 396 ["overcharging violated the covenant of good faith and fair dealing implied in the sales agreement"]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1467–1468 (*McKell*) [breach of contract cause of action stated where based upon allegations the defendant charged more than contract allowed].) Thus, we conclude Naranjo has alleged the COA was breached. In addition, he has alleged he has been "impacted financially" and has "suffered economic injury in fact" in that he has been charged the EMS Fee, has paid a portion of it, and is subject to what Medical Center contends is an "enforceable obligation" to pay it. These are allegations of damages suffered.

We now turn to the question of whether Naranjo's complaint forecloses the possibility he could amend his FAC to allege his performance of the COA, or an excuse for non-performance.

A. *Can Naranjo Allege Performance?*

Naranjo states, "if given the opportunity to amend, [he] will allege that he substantially performed or was excused from performance as a result of Medical Center's

prior breach of contract in imposing an EMS Fee that was not permitted under the COA."
Medical Center contends Naranjo cannot allege full performance because Naranjo's
"central obligation—to pay his hospital bill—is clearly spelled out in the contract, and his
lack of performance is clearly admitted in his complaint."

Medical Center's argument has some appeal but is not dispositive. In *Hale v.
Sharp Healthcare* (2010) 183 Cal.App.4th 1373 (*Hale*) the plaintiff, who was uninsured
and had received treatment from the defendant hospital, brought suit against the hospital
for, among other things, breach of contract and breach of the covenant of good faith and
fair dealing. (*Id.* at p. 1377.) Relevant to those claims, the plaintiff alleged her
agreement with the hospital obligated her to pay its "regular rates" but the hospital
charged her " 'exponentially more' for the same services than it accepted from patients
covered by Medicare or private insurance." (*Id.* at p. 1378.) She alleged she paid $500
toward the hospital's bill for $14,447.65 and "was excused from paying the *grossly
excessive amounts*," which exceeded the hospital's regular rates. (*Id.* at p. 1388.) The
hospital demurred to the breach of contract causes of action and the trial court sustained
the demurrer without leave to amend. (*Ibid.*)

The *Hale* court concluded the trial court "properly sustained the demurrer to both
contract-based claims." (*Hale*, *supra*, 183 Cal.App.4th at p. 1388.) It wrote: "Even if
[hospital's] conduct excused [plaintiff] from paying the portion of its bill that represented
'grossly excessive' rates, the [governing complaint] does not allege the reasonable value
of [plaintiff's] services was only $500, that she made any effort to determine the
reasonable value of the services, or that she made any effort to pay the discounted rates
[hospital] accepted from patients covered by Medicare or private insurance. The
[governing complaint] does not suggest [hospital] prevented [plaintiff] from paying at
least what she considers is fair. Further, since [plaintiff] paid [hospital] only $500, the

[governing complaint] shows she suffered no damages for the alleged breach of contract." (*Ibid*.)

Under the COA, Naranjo is obligated to "promptly pay for all hospital services in accordance with the regular rates and terms of the hospital." In the FAC, Naranjo alleges, "[a]fter deducting adjustments and discounts, the amount billed to [Naranjo] was $6,127.82, which included a portion of the [EMS] Fee." He alleges he "made payments to [Medical Center] in the amount of $900.00, a portion of which is for the contested [EMS] Fee. [Medical Center] has billed him and continues to seek to collect another $5,227.82 from him, for a total of $6,127.82 due from [Naranjo], a portion of which is due to the … [EMS] Fee." Medical Center contends this is an admission that Naranjo "has not performed his obligation to pay the uncontested portion of his hospital bill that was not for the [EMS] fee."

To the extent Naranjo has not paid Medical Center what is due on the uncontested charges in Medical Center's bill (i.e., the non-EMS Fee charges), Naranjo cannot allege he performed his obligations under the COA. (See *Hale*, *supra*, 183 Cal.App.4th at p. 1388.) The difficulty we have in adopting Medical Center's position on this issue is the manner in which Naranjo stated the allegation that Medical Center "has billed him and continues to seek to collect another $5,227.82 from him, for a total of $6,127.82 due from [Naranjo], a portion of which is due to the … [EMS] Fee." If the phrase "a portion of which is due to the … [EMS] Fee" was intended to refer to the outstanding balance of the Medical Center's bill (i.e., $5,227.82)—the first clause of the sentence under consideration—then Naranjo has effectively admitted he has not fully performed his obligations under the COA because a portion of the unpaid balance of the bill would necessarily include fees that are not contested. If, on the other hand, the phrase "a portion of which is due to the … [EMS] Fee" was intended to refer to the total amount of

27.

the bill (i.e., $6,127)—the second clause of the sentence under consideration—then it is unclear whether the $900 allegedly paid covered the uncontested fees.

Based on the above allegations, we cannot conclude that the possibility of amendment is foreclosed. If Naranjo can amend his FAC to allege he has paid all of Medical Center's charges, except for the contested EMS Fee, there is no reason he should not be permitted to do so.

Thus, we conclude the trial court abused its discretion by not granting Naranjo leave to state a breach of contract cause of action. However, to the extent Naranjo intends to amend to state a breach of contract cause of action, any allegation that he has performed his obligations under the COA must state that all of Medical Center's charges, with the exception of the challenged EMS Fee, have been paid. That is, a general allegation of performance—which is typically permissible (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367)—will not be sufficient under the circumstances of this case.[13]

B. *Can Naranjo Allege an Excuse for Non-Performance?*

Alternatively, we see no reason why Naranjo should not be permitted to allege an excuse for non-performance, if he can do so. Nothing in the FAC appears to foreclose such an amendment. However, any such allegation must be pleaded with specificity. (*Durell*, *supra*, 183 Cal.App.4th at p. 1367.)

---

[13]    The record on appeal does not include copies of the bill(s) Naranjo received from Medical Center. If there is an unresolved ambiguity in the amount of the EMS Fee (and, consequently, ambiguity in the amount of non-EMS Fees that are not being challenged), Naranjo may satisfy this pleading obligation by alleging, if he is able, his full payment of a good faith, estimated amount of non-EMS Fees, along with the efforts he took to determine the true amount of said fees, and the method by which he calculated his estimate. (See *Hale*, *supra*, 183 Cal.App.4th at p. 1388.)

28.

Based on the foregoing, we conclude Naranjo should be granted leave to state a claim for breach of contract subject to the criteria for alleging either performance or an excuse for nonperformance as discussed above.

## IX.    CONTRACT-BASED UCL AND CLRA CLAIMS

Naranjo contends the FAC alleges valid contract-based UCL and CLRA claims that are not based upon a "duty to disclose." He argues his allegation that he did not agree to pay the EMS Fee is sufficient to state a claim under the UCL.

Medical Center contends that the same allegations (i.e., that the EMS Fees were not disclosed in the COA) were at issue in *Capito* and yet the Supreme Court sustained the demurrer to the patient's UCL and CLRA claims. As previously stated, Medical Center further contends "the relief [Naranjo] seeks from this Court would effectively nullify the entire *Capito* opinion and its rationale.

For reasons articulated below, we believe Naranjo should be granted leave to amend the FAC to allege violations of the UCL and subdivisions (a)(5) and (a)(14) of Civil Code section 1770, a provision of the CLRA, based solely upon Medical Center's post-treatment billing practices.

We do not agree that allowing Naranjo to pursue such claims "would effectively nullify the entire *Capito* opinion and its rationale." We have already determined that claims based on events that arose after Medical Center completed its emergency care treatment and not based on an alleged pre-emergency-room-treatment duty of disclosure are not barred under the holding in *Capito*. (See section IV. of our discussion, *ante*.)

We are not persuaded by Medical Center's contention that the same allegations were at issue in *Capito*. It does not appear the Supreme Court was asked to consider whether the plaintiff had stated valid contract-based UCL and CLRA claims *not premised on an alleged pre-emergency-treatment duty to disclose*. "A case is not authority for a

29.

proposition not considered therein." (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611.)

"The main purposes of pleadings are: (1) To serve as a formal basis for the judgment; (2) to frame and limit the issues, separating issues of fact from questions of law; (3) to make available the defense of res judicata (claim preclusion) in a later action; and (4) *to give notice of the parties' claims, defenses, and cross-demands*." (4 Witkin, California Procedure (6th ed. 2021) Pleading, § 1, p. 73, italics added.) A complaint "serves to frame and limit the issues" and "to apprise the defendant of the basis upon which the plaintiff is seeking recovery." (*Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal.3d 197, 211, superseded by statute on other grounds as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.)

We have reviewed the FAC in detail and conclude it was drafted primarily on grounds Medical Center violated the UCL and CLRA by failing to disclose to Naranjo (and similarly situated persons) *prior to emergency care treatment* that it intended to charge them with an EMS Fee—a theory that is no longer viable under *Capito*. Aside from the declaratory relief cause of action, which clearly delineates a contract-based theory for declaratory relief, Naranjo's contentions and remaining causes of action appear tied to the theory Medical Center had a duty to inform *prospective* emergency room patients of the EMS Fee in order for those patients to make an informed decision whether to remain and receive emergency care. The FAC, as currently pleaded, does not fairly apprise Medical Center that Naranjo is seeking to hold them liable under the UCL and CLRA based solely on Medical Center's post-treatment billing practices.

In our opinion, the manner in which the FAC is alleged is ill suited to a determination that Naranjo has actually pleaded separate, contract-based UCL and CLRA claims. Notwithstanding, we conclude allegations within the FAC may support a claim that *post-treatment* practices of Medical Center with regard to its billing of EMS Fees are

30.

deceptive, and, as a result, are potentially actionable under the UCL. Importantly, nothing within the FAC seems to preclude Naranjo from stating causes of action under the UCL and CLRA based solely on Medical Center's post-treatment billing practices.

"The purpose of the UCL [citation] 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]' [Citation.] It 'defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice …." ' " (*McKell, supra,* 142 Cal.App.4th at p. 1470.) "[A] business practice need only meet one of [those] three criteria to be considered unfair competition." (*Id.* at p. 1471.)

A. *Fraud Prong of the UCL*

"A fraudulent business practice is one which is likely to deceive the public. [Citations.] It may be based on representations to the public which are untrue, and ' "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive…. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information in actionable under" ' the UCL. [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." (*McKell*, *supra*, 142 Cal.App.4th at p. 1471.)

"Whether a practice is deceptive or fraudulent 'cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer. [Citation.] Rather, the determination is one question of fact, requiring consideration and weighing of evidence from both sides before it can be resolved." (*McKell*, *supra*, 142 Cal.App.4th at p. 1472.)

Here, Naranjo has alleged the COA only obligates him to pay for "services" and the EMS Fee is not a fee for services. He alleges the initial billing statement he received from Medical Center "did not include an itemization of treatment and services received"

31.

and that, upon request, he received an itemized billing statement that only identified the EMS Fee as " '40100038 ER ROOM LEVEL IV,' which hides the fact that the EMS Fee is a separate fee not based on any specific item of treatment or service." In his UCL cause of action, Naranjo contends Medical Center's conduct is " 'deceptive' within the meaning of the UCL, in that Defendant fails to inform emergency care patients that they will be billed and required to pay a substantial, unreasonable, and undisclosed EMS Fee in addition to the charges for individual items of treatment or services provided to the patient."

Assuming the truth of Naranjo's allegations and liberally construing the FAC, as we must on demurrer (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517), we conclude a jury could reasonably find that a business practice that involves a hospital charging for services that a patient is not contractually obligated to pay, and hiding the nature of the fee in its original billing and in subsequently requested itemized bills (thereby, arguably implying the fee *was* for services) is deceptive to a reasonable consumer of emergency room services. Consequently, these allegations may well support a cause of action under the fraud prong of the UCL.

We conclude Naranjo should be permitted to amend his FAC to allege a cause of action under the fraud prong of the UCL based solely on Medical Center's post-treatment billing practices.

### B. *Unlawful Prong of the UCL and Naranjo's CLRA Claim*

"Unlawful business acts or practices within the meaning of the UCL include ' " ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " ' (*McKell*, *supra*, 142 Cal.App.4th at p. 1474.) "By prescribing 'any unlawful' business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. [Citation.] Virtually any statute or regulation (federal or state) can serve as a predicate for a UCL

32.

unlawful practice cause of action.  [Citation.]  … [A] violation of the CLRA can serve as the predicate for a UCL cause of action."  (*Gutierrez, supra,* 19 Cal.App.5th at p. 1265.)

Courts have determined it is an unfair business practice for a business to assert a contractual right that it does not have.  (*People v. McKale* (1979) 25 Cal.3d 626, 635 [mobile home park's rules and regulation that included provisions barred by statute determined deceptive because tenants are likely to believe the rule enforceable]; cf. *People v. Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 683–684.)

In his CLRA cause of action, the allegations of which are incorporated into Naranjo's UCL cause of action, Naranjo alleges, among other things, that Medical Center has violated subdivisions (a)(5) and (a) (14) of Civil Code section 1770, provisions of the CLRA.  Those provisions read: "The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: [¶] … [¶] (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.  [¶] …[¶] (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

In his UCL cause of action, Naranjo alleges Medical Center's conduct constitutes " 'unlawful' business practices within the meaning of the UCL in that it violates the CLRA, as set forth [in subsequent allegations of the FAC]."  As is generally the case with respect to the FAC, Naranjo's CLRA cause of action is likewise premised in large part on allegations that Medical Center had a duty to notify Naranjo and other prospective emergency room patients of the EMS Fee "in advance of providing treatment that triggers it."  In his CLRA cause of action, Naranjo claims advance knowledge that an EMS Fee

33.

would be charged "would be a material factor in a patient's decision to remain at [Medical Center's] emergency room in order to obtain evaluation and treatment" and that had he been notified of the Fee "prior to incurring treatment …, [he] would have left and sought less expensive treatment elsewhere." Similar allegations are repeated throughout his CLRA cause of action. As discussed, *Capito* precludes such claims to the extent they are premised on an alleged extra-statutory or extra-regulatory duty to disclose such fees to emergency room patients prior to those patients receiving emergency care treatment.

Because we have determined the FAC is the functional equivalent of an original complaint, great liberality should be shown in permitting amendments that are not foreclosed by Naranjo's allegations. (*Eghtesad*, *supra*, 51 Cal.App.5th at pp. 413–414.) Nothing in our review of the FAC suggests Naranjo is foreclosed from amending his FAC to allege a CLRA claim or a related claim that Medical Center's post-treatment billing practices are unlawful under the "unlawful" prong of the UCL.

We conclude Naranjo should be permitted to amend the FAC to so allege.

### C. *Unfair Business Practice Prong*

California courts have applied a variety of tests to determine whether a business practice is unfair under the UCL. "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,' (*Durell*[*, supra,*] 183 Cal.App.4th [at p.] 1366 … ); (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' (*Morgan v. AT&T Wireless Servs., Inc.* [(2009)] 177 Cal.App.4th 1235, 1254 …); or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.' [*Ibid.*]" (*Doe v. CVS Pharmacy, Inc.* (9th Cir. 2020) 982 F.3d 1204, 1214–1215.)

Again, nothing in the FAC precludes Naranjo from stating a cause of action under the "unfair" prong of the UCL based on Medical Center's post-treatment billing practices. Leave to amend must be granted.

**DISPOSITION**

Our prior opinion filed on April 28, 2023, is hereby vacated. Having considered the matter in light of *Capito v. San Jose Health Healthcare System, LP* (2024) 17 Cal.5th 273, we reverse the judgment of dismissal. We hold Naranjo's claims are barred to the extent those claims are premised on an alleged duty on Medical Center's part (beyond those duties required under the relevant statutory/regulatory schemes discussed in *Capito* and in this opinion) to disclose EMS Fees to Naranjo and other similarly situated persons *prior to providing them emergency care treatment*; Naranjo has stated a valid, contract-based cause of action for declaratory relief; and Naranjo is entitled to amend the FAC to state, if he can, causes of action for breach of contract, and for violations of the UCL and CLRA, subject to the parameters stated in this opinion.

We remand the case to the trial court for further proceedings not inconsistent with this opinion. Naranjo is entitled to his costs on appeal.


FRANSON, Acting P. J.

WE CONCUR:


SMITH, J.


FAIN, J.[*]

---

[*]    *Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.